UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAVAN JERRELLE WILSON, SR.,

      Plaintiff,

v.

NATHANAEL SMITH, BRIAN
SHIPMAN, JEROME WARFIELD,
SR., CRISSA BLACKENBURG,
TIMOTHY FLANAGAN, and JOHN
DOE,

      Defendants.

_____/

Case No. 2:23-cv-11666
District Judge David M. Lawson
Magistrate Judge Kimberly G. Altman

**REPORT AND RECOMMENDATION TO
DENY DEFENDANTS' MOTION TO DISMISS (ECF No. 40)
AND
DENY PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT (ECF No. 46)
AND
GRANT PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION (ECF No. 29)**[1]

I.    Introduction

This is a prisoner civil rights case. Plaintiff Javan Wilson, Sr., (Wilson) has sued

Michigan parole board members Crissa Blankenburg (Blankenburg), Timothy Flanagan

(Flanagan), Brian Shipman (Shipman), and Nathanael Smith (Smith), alleging that after

he began serving a prison sentence for non-sex crimes, he was improperly classified as a

_____

[1] Upon review of the motions, the undersigned deems these matters appropriate for
decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

1

sex offender and then had his parole conditioned upon the completion of sex offender mental health treatment, in violation of his procedural due process rights under the United States Constitution.[2]  Wilson only seeks prospective equitable relief in the form of removal of his parole condition until a proper hearing is held in accordance with his right to due process.  (ECF No. 46, PageID.460).  All pretrial matters have been referred to the undersigned.  (ECF No. 13).

Before the Court are Wilson's motion for preliminary injunction, (ECF No. 29); defendants' motion to dismiss, (ECF No. 40); and Wilson's motion for summary judgment, (ECF No. 46).  All of the motions are fully briefed and ready for consideration. For the reasons stated below, the undersigned RECOMMENDS that defendants' motion be DENIED, Wilson's motion for summary judgment be DENIED, and Wilson's motion for preliminary injunction be GRANTED.  With regard to the preliminary injunction, the undersigned recommends that Wilson's parole condition requiring sexual abuse prevention treatment be discontinued until he is afforded a hearing that follows the minimum requirements of due process, as outlined in this Report and Recommendation.

## II.    Procedural History

Wilson filed this suit on July 12, 2023.  (ECF No. 1).  That complaint, filed *pro se*, still governs.  On August 14, 2023, Wilson filed a motion for preliminary injunction. (ECF No. 11).  The undersigned recommended denial of this motion, as defendants did

---

[2] As will be explained, Wilson filed his complaint *pro se*, but has since obtained counsel.

not receive notice of it, (ECF No. 16), and that recommendation was adopted on October 5, 2023, (ECF No. 24).

On November 8, 2023, after defendants appeared and a scheduling order was entered, Wilson filed a second motion for preliminary injunction.  (ECF No. 29).  At this point, Wilson was still proceeding *pro se*.  Defendants timely responded.  (ECF No. 31).  Then, on December 11, 2023, attorney Frank J. Lawrence moved to represent Wilson in a limited capacity, specifically for the purpose of filing a reply in support of the pending motion for preliminary injunction, and to allow defendants to file a surreply.  (ECF No. 33).  That motion was granted the following day.  (ECF No. 34).  The proposed reply brief, (ECF No. 33-2), was accepted as the reply, and defendants filed their surreply on January 4, 2024, (ECF No. 39).

Defendants moved to dismiss the case on February 13, 2024.  (ECF No. 40).  Shortly thereafter, attorney Frank J. Lawrence filed a general appearance on behalf of Wilson, (ECF No. 42), and then filed a motion for summary judgment on Wilson's behalf, (ECF No. 46).  Defendants' motion to dismiss is now fully briefed, (ECF Nos. 52, 53), as is Wilson's motions for summary judgment, (ECF Nos. 54, 56), and for preliminary injunction, (ECF Nos. 31, 33-2, 39).

### III.    Pertinent Facts and Issues

The parties agree on many of the pertinent facts of the case.  Wilson is currently serving a sentence for a violation of M.C.L. § 750.88 – Assault with intent to rob and steal; unarmed, and is on parole.  (ECF No. 46, PageID.461).  Wilson's Presentence

3

Investigation Report (PSI) mentions that he had also been charged with two counts of Criminal Sexual Conduct in the first degree, but those charges were dismissed in a plea deal, and he has never been convicted of a sex crime. (*Id.*). Nevertheless, Wilson alleges that he was labeled as a "sex offender or possible sex offender" upon his incarceration in 2018. (*Id.*, PageID.462). On or around April 5, 2018, Wilson objected to this classification in writing, but the Michigan Department of Corrections (MDOC) refused to grant his request for an administrative hearing. (*Id.*, PageID.463).

Wilson first went before the parole board on April 27, 2021, and the board deferred their decision on parole until Wilson completed a sexual offender risk assessment. (ECF No. 31, PageID.191). Wilson voluntarily underwent a sexual offender risk assessment performed by an MDOC psychologist on June 30, 2021. (*Id.*). As a result, it was recommended that Wilson complete sexual abuse prevention programming and he was transferred to a unit housing other prisoners recommended to complete the same programming. (*Id.*, PageID.192). Wilson was denied parole on or about July 9, 2021. (ECF No. 46, PageID.463).

The next year, on May 4, 2022, Wilson was interviewed by Blankenburg, and his bid for parole was denied. About a month prior to the interview, on April 22, 2022, Wilson had begun participating in the "[Treatment Readiness for You (TRY)] Group". (ECF No. 31, PageID.193). According to Wilson, the TRY group is the first step of MDOC's Michigan Sexual Abuse Prevention Program (MSAPP). (ECF No. 46, PageID.464). Wilson says that he was denied parole because he had not finished the TRY

4

Group treatment nor the subsequent steps of MSAPP, and that Blankenburg told him to

be patient because the subsequent steps did not have openings for inmates at that time.

(*Id.*).  He was eventually able to enter "Phase II" of MSAPP on November 17, 2022, and

completed the course on May 16, 2023.  (*Id.*, PageID.465; ECF No. 31, PageID.195).

Following his completion of MSAPP, Wilson was placed on parole on September 6,

2023.  (ECF No. 31, PageID.196).  One of the conditions of Wilson's parole, which is

ongoing, is that he complete a sexual abuse prevention program while in the community.

(*Id.*).

Wilson and defendants dispute whether he was denied parole on the two occasions

above due to having not completed a sexual abuse prevention program.  Defendants say

Wilson's parole was denied due to his risk factors; Wilson says that board members told

him directly that he needed to complete the program in order to get parole.  The parties

also dispute whether Wilson has committed any sexual misconduct.  Defendants refer to

MSAPP treatment notes in which Wilson admits to doing so, while Wilson says that he

was coerced into lying about having committed a sex crime in order to complete the

training and be placed on parole.

IV.    Legal Standards

A.    Motions to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff

and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.

5

2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

### B.     Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

V.      Discussion

A.      Defendants' Motion to Dismiss

1.      Standing

a.      Parties' Arguments

Defendants argue that Wilson lacks standing for his requested relief to avoid sexual abuse prevention treatment and for a parole board rehearing. They note that at this time, Wilson voluntarily completed the treatment and risk assessments MDOC recommended and is on parole. Thus, they say these requests are moot.

Wilson argues that he is still "in custody" while on parole, citing *Jones v. Cunningham*, 371 U.S. 236 (1963), and that as he is still required to sex offender mental health treatment as a condition of parole, his claim that he should not be required to do so without his right to an administrative hearing is still ripe before the Court. Further, his

7

request for rehearing is not moot because a new parole board hearing could result in the elimination of his parole condition that he complete a sexual abuse prevention program while in the community.

Wilson also notes that the issue is time sensitive. According to an email from Wilson to his attorney, his original requirement of 52 weeks of MSAPP while on parole may be reduced to 26 weeks based on a potential error in his risk assessment score. Wilson argues that this is gamesmanship on the part of the MDOC to render his claims moot before they can be heard by this Court. *See* ECF No. 52-5.

As for other similarly situated prisoners, defendants argue that Wilson is limited to his own personal allegations and lacks standing to pursue claims on their behalf. Wilson has not sought class certification. Thus, they argue, he lacks standing to proceed on anyone's behalf other than himself.

Wilson argues that even if this limitation is valid, the Court has the power to issue a declaratory ruling that could assist other prisoners who suffer similar, future violations of their due process rights by opening the door to their ability to seek monetary damages.

b.     Mootness and Standing

The facts as they currently stand differ from those when Wilson filed the complaint on July 12, 2023. (ECF No. 1). "Though the State properly subjects [a parolee] to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). However, the core complaint is the same. Wilson is now required to attend the

MSAPP program as a supervisory condition of parole, the same as he alleges he was required to attend in order to be placed on parole.  As Wilson says, he remains "in custody" while on parole.  *See Jones*, 371 U.S. 236.  Further, his alleged independent liberty interest in removing his supervision condition of "[t]reatment program (sexual abuse prevention)" for "the entire world to see" remains intact for standing and mootness purposes.  (ECF No. 52, PageID.594).[3]

"The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings."  *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) 141 S. Ct. 792, 796 (2021).  "[I]f in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot."  *Id.*

The mootness doctrine applies to defendants' argument that Wilson's claims are rendered moot by his acquiescence to MSAPP treatment and his release to parole.  However, Wilson is correct that as a condition of parole, he is still required to attend the same sort of treatment he contends violates his constitutional rights.  Furthermore, "a claim is only moot where 'subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' "  *Harper v. Arkesteyn*, No. 19-CV-11106, 2022 WL 3446198, at *2 (E.D. Mich. Aug. 17, 2022) (quoting *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008)).  "The 'heavy

---

[3] This supervisory condition is available for the public to see at https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=705635 (last accessed May 16, 2024).

burden' of persuading the court that the challenged conduct cannot be reasonably expected to start up again lies with the party asserting mootness." *Id.* (quoting *Akers v. McGinnis*, 352 F.3d 1030, 1036 (6th Cir. 2003)).

As a supervision condition, attendance of the sexual abuse prevention program is required for Wilson to remain on parole. Thus, even if Wilson's claim were limited to attending that program to be *placed* on parole, he could reasonably be expected to face the challenged conduct again were his parole revoked. Therefore, his requests for injunctive and declaratory relief are not moot.

As for any relief Wilson seeks directly on behalf of other prisoners, defendants are correct that he lacks standing to raise any such claim. A prisoner "is limited to asserting alleged violations of his own constitutional rights and, absent a request for class certification, lacks standing to assert the constitutional rights of other prisoners." *Song v. Parker*, Case No. 22-5199, 2023 WL 7103180, *2 (6th Cir. 2023) (citing *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989)). To satisfy the "irreducible constitutional minimum" of Article III standing, a plaintiff must establish: (1) an injury in fact (2) that is fairly traceable to the challenged conduct, and (3) must seek a remedy that is likely to redress that injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

At the time Wilson filed the complaint, he clearly had standing to complain of what he alleged to be conditions he was required to satisfy before being granted parole. He thus has standing to proceed on these claims. However, under *Song*, Wilson lacks standing to raise claims based on the current or future conditions of any other prisoner.

Thus, other than potentially securing a favorable ruling for himself that might establish beneficial precedent for others, he may not sustain claims for relief as to other prisoners. Those claims should be dismissed for lack of standing as defendants request.

2.       Constitutionally Protected Liberty Interest

a.       Standard

Defendants argue that Wilson has not alleged a plausible procedural due process claim.  To state a procedural due process claim under the Fourteenth Amendment, a plaintiff must establish the deprivation of a constitutionally protected liberty or property interest.  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).  Wilson alleges that subjecting him to a psychological risk assessment for sexual abuse and recommending sexual abuse prevention treatment without a hearing, when sexual assault charges were dismissed as part of a plea agreement, violates his Fourteenth Amendment right to procedural due process.

b.       Analysis

The Supreme Court in *Swarthout* made clear that "[t]here is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners."  516 U.S. at 220 (citing *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979)).  Wilson says that defendants' reliance on this principle misses the mark.  He is not arguing that he was wrongfully denied parole, but that he has a liberty interest in

11

having the supervision condition of attending a sexual abuse prevention treatment program removed.

A similar claim was considered in *Harper v. Arkesteyn*, No. CV 19-11106, 2022 WL 2338578, at *13 (E.D. Mich. June 28, 2022) (Grand, M.J,), *report and recommendation adopted*, 2022 WL 3446198 (E.D. Mich. Aug. 17, 2022) (Steeh, J.) (*Harper II*). Like here, *Harper II* involved a plaintiff that was recommended to participate in the Michigan Sex Offender Program (MSOP, since renamed MSAPP) based on an MDOC risk assessment, despite not having been convicted of a sex crime. *Id.* at *4. The plaintiff, like Wilson, initially refused, but eventually acquiesced and entered the TRY program. *Id.* at *5. Unlike Wilson, the plaintiff in *Harper II* did not complete the MSOP programming and was denied parole on three occasions. *Id.* at *6-9.

At a prior stage in the *Harper* litigation, the plaintiff appealed the district court's dismissal of his case on screening. He had made a similar argument to Wilson, acknowledging no constitutional right to being placed on parole, but arguing that he had a liberty interest in not being classified as a sex offender or compelled to submit to sexual abuse prevention treatment. The Sixth Circuit explained that it had

> not addressed the question of whether a prisoner has a liberty interest in not being classified as a sex offender. But other circuits that have considered the issue have held that prisoners do have such a liberty interest. *See Renchenski v. Williams*, 622 F.3d 315, 326 (3d Cir. 2010) (holding that prisoners have a liberty interest in not being labeled as a sex offender and forced into treatment, and thus are entitled to adequate process before prison officials take such action); *see also Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999) (per curiam) (holding that a convicted attempted murderer "retains a 'residuum of liberty' that would be infringed by classification as a sex offender without complying with minimum requirements of due process")

(quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980)); *Neal v. Shimoda*, 131 F.3d 818, 829-30 (9th Cir. 1997). We need not consider the merits of this issue of first impression. At this juncture, the district court is best positioned to consider this issue in the first instance. Still, at the motion to dismiss stage, considering the foregoing authorities, Harper's complaint contains sufficient factual matter to support a plausible claim that his procedural-due-process rights were violated when the defendants classified him as a sex offender.

*Harper v. Arkesteyn*, No. 19-1928, 2020 WL 4877518, at *3 (6th Cir. Apr. 28, 2020)

(*Harper I*).

Following the Sixth Circuit's reversal and remand, the plaintiff returned to the district court and filed a motion for partial summary judgment, which resulted in *Harper II*. In *Harper II*, the magistrate judge summarized the relevant case law from other circuit courts as follows:

In *Neal*, the Ninth Circuit confronted Hawaii's sex offender program, which labeled inmates as sex offenders and required its completion as a precondition for parole eligibility. *Neal*, 131 F.3d at 818, 822. Inmate Neal, who was not convicted of a sex offense but classified as a sex offender based on the indictment and PSI, refused to complete the program. *Id.* The Ninth Circuit held that it could "hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender," and that "the stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections." *Id.* at 829-30.

In *Kirby*, the Eleventh Circuit held that Alabama's classification of inmate Edmond, who was convicted of attempted murder, as a sex offender based on two prior sex-related offense charges listed in his PSI implicated a liberty interest under the Due Process Clause. *Kirby*, 195 F. 3d at 1288. That court determined that Edmond had "a liberty interest in not being branded a sex offender" and "the stigmatizing effect of being classified as a sex offender constitutes a deprivation of liberty under the Due Process Clause," so "an inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender." *Id.* at 1292.

13

In *Coleman v. Dretke*, 395 F.3d 216 (5th Cir. 2004) ("*Coleman I*"), the Fifth Circuit held that requiring a prisoner to register as a sex offender and participate in therapy as a condition of supervised release triggered a liberty interest.  Inmate Coleman, who had not been convicted of a sex offense, was released from prison on mandatory supervision with conditions requiring him to register as a sex offender and attend sex offender therapy.  *Coleman I*, 395 F.3d at 219.  He was never given notice of an opportunity to contest these conditions, and when he failed to participate in therapy, his parole was revoked.  *Id.*  The Fifth Circuit agreed with the Ninth and Eleventh Circuits "that prisoners who have not been convicted of a sex offense have a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions."  *Id.* at 222.  It determined that this case was "materially indistinguishable from *Vitek*," and because the "highly invasive nature" of Texas' sex offender therapy program made it "qualitatively different from other conditions which may attend an inmate's release," Coleman had a "liberty interest in freedom from the stigma and compelled treatment on which his parole was conditioned" that required some procedural protections.  *Id.* at 223.

Finally, in *Renchenski*, the Third Circuit held that Pennsylvania's labeling of inmate Renchenski, who was sentenced to life without the possibility of parole for murder but neither charged nor convicted of a sex crime, as a sex offender and compelling him to submit to sex offender treatment triggered an independent liberty interest under the Due Process Clause.  Due to his classification, Renchenski was enrolled, but refused to participate, in a sex offender program, which subjected him to "substantial penalties, including the loss of his prison job, assignment to disciplinary custody for ninety days, cell restriction for thirty days, suspension of the right to receive visitors, and loss of privileges such as access to television, radio, and the commissary."  *Renchenski*, 622 F.3d at 323.  The Third Circuit held that not only was a sex offender label "severely stigmatiz[ing]," but that "because Renchenski was convicted of murder and his punishment is predicated upon that conviction, sex offender treatment is not one of the conditions of confinement that his sentence imposes upon him.  In turn, compelled treatment, i.e., sex offender therapy, changes the conditions of Renchenski's sentence and, accordingly, constitutes a loss of freedom from liberty that exceeds his loss of freedom from confinement."  *Id.* at 326-27.

*Harper II*, 2022 WL 2338578, at *14-15 (internal footnotes omitted).  The court also

summarized rulings from the 10th and 7th Circuits.  *Id.* at *15 n.17 (citing *Chambers v.*

*Colorado Dep't of Corr.*, 205 F.3d 1238 (10th Cir. 2000) (holding that Colorado's classification of inmate Chambers as a sex offender, combined with a reduction in good time credits if he did not participate in sex offender treatment, implicated a state-created liberty interest); *Grennier v. Frank*, 453 F.3d 442 (7th Cir. 2006) (holding that the stigmatization of being called a sex offender and being denied parole on that basis did not implicate due process where Wisconsin's discretionary parole system lacked any "mandatory language" to create a liberty or property interest in an opportunity to be released on parole)).

The *Harper II* court distinguished *Grennier*, as well as three other cases, two of which were cited by defendants, (*Kramer v. Donald*, 286 F. App'x 674 (11th Cir. 2008), *Toney v. Owens*, 779 F.3d 330 (5th Cir. 2015), and *Hernandez v. Washington*, No. 16-10854, 2017 WL 1214436 (E.D. Mich. Jan. 20, 2017), *report and recommendation adopted*, 2017 WL 1130090 (E.D. Mich. Mar. 27, 2017)) finding that those courts were not presented with or otherwise? did not address "whether an inmate was sufficiently classified as a sex offender for stigmatization purposes, much less whether one can be sufficiently stigmatized by being informally labeled as such in practice." *Harper II*, at *18 n.20.

In sum, the weight of authority from the Third, Fifth, Ninth, Tenth, and Eleventh Circuits as well has the decision of the district court in *Harper II*, suggests that a constitutionally protected liberty interest exists in not being labeled a "sex offender" and/or being required to attend sexual abuse prevention treatment.

Defendants attempt to distinguish these cases from Wilson's.  First, they argue that the plaintiffs in those cases suffered additional harms for refusing to participate in treatment.  In *Chambers*, the plaintiff suffered a removal of good time credits; in *Renchencski*, the plaintiff suffered "substantial penalties" including assignment to disciplinary custody and cell restriction; and in *Neal*, the plaintiff was rendered "completely ineligible for parole."  (ECF No. 40, PageID.346).

Defendants also argue that "it is the classification as a sex offender, combined with mandatory sex offender treatment while in custody, that has been found to create a protected liberty interest by some courts, not the classification alone."  (*Id.*).  They say that Wilson was not labeled a sex offender and that while he was recommended treatment, his parole was not conditioned on it, and he suffered no other consequences for his initial refusal to participate.

These arguments do not carry the day.  At the motion to dismiss stage, the Court must accept the well-pled allegations as true.  Wilson alleges that he has formally or informally been labeled a sex offender in the MDOC system, and that he has suffered the stigmatizing effects of that label.  (ECF No. 1, PageID.5).  Furthermore, he alleges with particularity that he was denied parole because he refused treatment, he was transferred to a sex offender unit for over a year, and MDOC's "recommendations" are actually mandatory conditions.  (*Id.*, PageID.12-14).

Similar allegations in *Harper I* led the Sixth Circuit to reverse the district court's dismissal of that plaintiff's case, and in *Harper II*, the court found that "[the d]efendants'

16

reliance on the lack of a formal 'sex offender' classification within the MDOC places form over substance and lacks merit."  2022 WL 2338578, at *17.  The court ultimately concluded that

> notwithstanding the absence of a formally mandated classification, [the d]efendants' assessment of [the plaintiff] using tools designed for sex offenders, calling him a 'sex offender,' assigning him for a treatment program for sex offenders, and then transferring him to be housed in a sex-offender unit to participate in sex offender treatment sufficiently identified Harper as a sex offender or 'possible' sex offender to satisfy the 'stigmatizing consequences' prong of his Due Process claim.

*Id.*

The undersigned agrees with this assessment as it relates to Wilson's claim. Furthermore, as Wilson is currently on parole, his supervision condition to participate in sexual abuse prevention treatment is mandatory and violating it would likely result in recission of his parole.  As such, Wilson has sufficiently stated a procedural due process claim for his classification without an opportunity to be heard.  Defendants' motion to dismiss should be denied.

B.    Wilson's Motion for Summary Judgment

1.    Wilson's Argument

Wilson has moved for summary judgment because he believes there is no genuine issue of fact that he was classified as a sex offender, required to undergo MSAPP treatment to be eligible for parole, and denied an administrative hearing prior this classification and requirement.  (ECF No. 46).  In support, he has attached a sworn declaration as to his version of the facts.  (ECF No. 46-4).

17

Wilson reiterates that he while he was not convicted of a sex crime, he was required to participate in MSAPP treatment in order to be released on parole based on his PSI.  He says that while the MDOC refers to this as a "recommendation," prisoners are not free to reject MDOC's recommendations if they wish to be parole eligible.  He also says that he was labeled a "sex offender or possible sex offender" based on his PSI, which caused undeserved stigmatization.  (ECF No. 46, PageID.461-462).

The facts in Wilson's motion and declaration are identical to those summarized above in the undersigned's consideration of defendants' motion to dismiss.  In short, Wilson was denied parole on two occasions, first before he had entered MSAPP treatment and second while he was still in the first stage of treatment and thus had not completed the program.  Upon completing MSAPP treatment, Wilson was released on parole, which requires continued sexual abuse prevention treatment as a supervision condition.

Before being released on parole, Wilson was transferred to a segregated sex offender unit.  He says he was coerced by defendants into participating in phase one and two of the MSAPP treatment plan, as this was his only avenue for parole.  As noted above, his current parole conditions are available on the internet to the public.  Wilson says his continued requirement to receive treatment for sex offenders has stigmatized and traumatized him and has required him to "admit" to a sexual assault that he never committed.  (*Id.*, PageID.463-466).

Wilson argues that he has a constitutionally protected liberty interest in not being labeled a sex offender or required to participate in MSAPP treatment, citing *Vitek*, *Neal*,

18

*Kirby*, *Chambers*, *Coleman*, *Renchenski*, and *Harper I* and *II*, *supra*.  He contends that this liberty interest was violated without due process, the requirements of which are outlined in *Morrissey v Brewer*, 408 U.S. at 488-89.

### 2.      Defendants' Argument

Defendants raise several rebuttals to Wilson's motion.  They argue that the motion rests on several new factual allegations that are not contained in the complaint, namely that Wilson was "coerced" into accepting his parole conditions and the facts about his current participation in sexual abuse prevention treatment.  (ECF No. 54, PageID.673).  They cite copious Sixth Circuit authority that requires plaintiffs to amend their pleadings under Federal Rule of Civil Procedure 15(a) before asserting new facts or claims in summary judgment motions.  (*Id.*, PageID.674).  Citing *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019), they say that the Sixth Circuit has rejected the theory that the claims in a complaint be viewed at a high level of generality at this stage.  (*Id.*, PageID.677).

As to the merits of the motion, defendants reiterate that the Sixth Circuit has suggested, but not found, a protected liberty interest in not being labeled a sex offender.  *See, e.g.*, *Harper I*.  But as evidenced in *Harper II*, even if the Court finds that a liberty interest was pled, there may be an issue of fact on two fronts: (1) whether Wilson was classified as a sex offender and (2) whether he was truly required or coerced into treatment to obtain parole and/or as a condition of parole.  Defendants distinguish this case from *Wills v. U.S. Parole Comm'n*, 882 F. Supp. 2d 60, 76 (D.D.C. 2012)—a case

19

relied on by Wilson—where the plaintiff was granted partial summary judgment on his Fifth Amendment due process claim, because there, the defendants "compelled the plaintiff to disclose the nature of his 'sex offense' to his then-girlfriend[,]" a condition that is not present here.  They also argue that "a single, distinguishable, unpublished, out of circuit case from twelve years ago does not aid [Wilson's] case." (*Id.*, PageID.691). On the latter point, defendants say that Wilson was not "coerced" or required to accept the conditions of his parole, nor was he required to participate in MSAPP treatment prior to being released on parole, and that there is at least a question of fact on these issues, which would affect whether Wilson can establish a protected liberty interest. (*Id.*, PageID.692-693).  Defendants do not address whether Wilson was afforded adequate due process before imposition of any of the sexual abuse prevention conditions or recommended treatments.

Finally, defendants request in the alternative that ruling on this motion be deferred and that they be granted additional time for discovery in order to investigate Wilson's "new" claims.

### 3.    Analysis

Where a plaintiff moves for summary judgment on a claim for which he bears the burden of proof at trial, he faces a " 'significantly higher hurdle.' " *Horton v. Greene*, No. 16-CV-12715, 2019 WL 1552480, at *2 (E.D. Mich. Apr. 10, 2019) (quoting *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002)).  The summary judgment burden here is " 'higher in that it must show that the record contains evidence satisfying the burden of

persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (quoting 11 James William Moore et al., Moore's Federal Practice § 56.13[1], at 56–138 (3d ed. 2000)).

The undersigned recommends denial of Wilson's motion for summary judgment on its merits because, while it has been explained above that Wilson has adequately pled a constitutionally protected liberty interest, there are questions of fact regarding the conditions Wilson faced that could reasonably fall short of invoking a liberty interest. While the *Wills* court found otherwise in the face of similar facts, the court in *Harper II* denied that plaintiff's motion for summary judgment because the plaintiff "fail[ed] to meet his high burden of showing that no reasonable juror could find other than that a recommendation for MSOP constitutes mandatory participation to be eligible for parole release[.]" 2022 WL 2338578, at *18-19. *Harper II* emphasized that the cases from various circuit courts hinged on the negative consequences that flowed from inmates' refusal to attend treatment. In *Renchenski*, the plaintiff's lack of participation resulted in " 'substantial penalties, including the loss of his prison job, assignment to disciplinary custody for ninety days, cell restriction for thirty days, suspension of the right to receive visitors, and loss of privileges such as access to television, radio, and the commissary.' " *Id.* at *15 (citing *Renchenski*, 622 F.3d at 323). And in *Neal*, the fact that an inmate would be "*completely ineligible* for parole" without successful completion "has a

21

practical and inevitable coercive effect on the inmate's conduct[.]"  131 F.3d at 829
(emphasis added in original).

The strongest reason to grant Wilson's motion for summary judgment stems from
the Fifth Circuit case, *Coleman v. Dretke*.  *Coleman* is similar to the present case in that
the plaintiff complained of "sex offender conditions" that were placed on his parole.  395
F.3d at 222.  The Fifth Circuit found that "the state imposed stigmatizing classification
and treatment on [the plaintiff] without providing him any process" necessarily invoked
the Due Process Clause and required procedural protections before imposing such
conditions.  *Id.* at 223.  This is because "[a]lthough many parolees are required to
participate in some form of counseling or treatment as a condition on their release, we
find that, due to its highly invasive nature, Texas's sex offender therapy program is
'qualitatively different' from other conditions which may attend an inmate's release."  *Id.*

*Coleman*, however, is distinguishable at this stage in the present litigation because
the Fifth Circuit in *Coleman* had evidence that the state's sex offender therapy involved
"intrusive and behavior-modifying techniques" and was "highly invasive."  *Id.*  Here, the
Court has only Wilson's declaration by which to assess the nature of the sexual abuse
prevention treatment in question, and as attested to in a declaration from Assistant
Attorney General Keith G. Clark (Clark), defendants have not had a meaningful
opportunity to conduct discovery on Wilson's parole conditions.  (ECF No. 54-2).  Clark
states that in order to defend against Wilson's claims related to his parole conditions (as
opposed to the eligibility of parole referenced in the complaint), additional discovery

would be needed.  (ECF No. 54-2).  The undersigned agrees.[4]  Therefore, Wilson's

motion for summary judgment should be denied.

### C.      Wilson's Motion for Preliminary Injunction

The final motion before the Court is Wilson's motion for a preliminary injunction.

(ECF No. 29).  Wilson argues that he continues to suffer irreparable harm as a

consequence of being classified as a sex offender and being required to attend sex

offender therapy classes to remain on parole in the community.  (*Id.*, PageID.101).

### 1.      Legal Standard

Courts in the Sixth Circuit apply the same standard to a motion for a temporary

restraining order (TRO) and a motion for a preliminary injunction.  *Summit Cnty.*

*Democratic Cent. & Executive Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004).

Under that standard, the factors are: (1) whether the movant has a strong likelihood of

success on the merits, (2) whether the movant would suffer irreparable injury absent a

TRO or preliminary injunction, (3) whether granting the TRO or preliminary injunction

would cause substantial harm to others, and (4) whether the public interest would be

---

[4] Discovery recently closed.  If this Report and Recommendation is adopted, the undersigned will consider a request to reopen discovery for a limited time and purpose upon a motion from any party.  Indeed, in the order denying without prejudice defendants' motion to stay discovery pending resolution of the dispositive motions, the undersigned said that "if any claims remain after defendants' motion to dismiss is resolved, defendants may move to reopen discovery, outlining and justifying the discovery they request. . . ."  (ECF No. 51, pageID.582).

served by granting the TRO or preliminary injunction. *Ne. Ohio Coal. for Homeless &*
*Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

2.      Analysis

Here, based on the analysis above, Wilson has a strong likelihood of success on
the merits. Although the undersigned recommends that Wilson's motion for summary
judgment be denied as essentially premature, Wilson "need not prove his case in full" at
this time. *Spangler Candy Co. v. Tootsie Roll Indus., LLC*, 372 F. Supp. 3d 588, 600
(N.D. Ohio 2019) (cleaned up). That said, he "must show more than a mere possibility of
success." *Id.* Wilson has done so because there is a high likelihood that his liberty
interest was infringed without due process by being required to undergo sexual abuse
prevention treatment as a condition of his parole. *See, e.g.*, *Coleman*.

As for irreparable injury, Wilson argues that his injury is irreparable and ongoing
because he continues to be required to attend treatment as a condition of parole and to
suffer the stigmatizing effects of this status being readily viewable to anyone on the
internet. " 'When constitutional rights are threatened or impaired, irreparable injury is
presumed.' " *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 407 (6th Cir. 2017) (quoting
*Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)). Defendants argue that this
case is distinguishable from *Doe* in that *Doe* involved a student's suspension from college
without due process, which is substantively different from loss of parole. However,
students do not have the *right* to attend college any more so than prisoners have a right to
parole. Furthermore, the principle is the same under any set of facts where a plaintiff's

24

constitutional rights are continuously threatened or impaired.  Defendants' argument amounts to saying Wilson has no liberty interest because there is no constitutional right to parole.  But as explained in detail above, that is not precisely Wilson's claim.  He claims that the parole condition itself infringes on a valid liberty interest, which has been supported as a constitutional claim by several circuit courts, *supra*.  Therefore, Wilson has satisfied the irreparable injury factor.

Regarding the substantial harm to others and public policy, defendants argue that granting a preliminary injunction would run counter to Sixth Circuit and Supreme Court precedent that courts exercise restraint in enjoining prison officials and supervising the minutiae of prison life.  *See Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984); *McKune v. Lile*, 536 U.S. 24, 37 (2002). "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987).  Courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995).

Defendants argue that according to Supreme Court precedent, it is "clear that states have a vital interest in rehabilitating convicted sex offenders."  (ECF No. 31, PageID.211 (citing *McKune*, 536 U.S. at 33)).  But Wilson has not been *convicted* of any sex crime.  That is, in essence, the crux of the litigation.  Defendants cite numerous

authorities for the benefits of treatment to prevent recidivism, but none that apply to conditions placed on a parolee who has *not* been convicted of a relevant crime.

"When a constitutional violation is likely . . . the public interest militates in favor of injunctive relief because 'it is always in the public interest to prevent violation of a party's constitutional rights.' " *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010) (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)); *see also Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.,* 274 F.3d 377, 400 (6th Cir. 2001) ("[I]f the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment.").

The injunction here will *cease* the State's requirement that Wilson attend sexual abuse prevention treatment as a condition of his parole until a *hearing can be held that adheres to the minimum requirements of due process*, as set forth in *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). This includes:

(a)  Written notice of the hearing and its purpose,

(b)  Disclosure to Wilson of the evidence against him, or in favor of the supervision condition sought,

(c)  An opportunity to be heard in person and to present witnesses and documentary evidence,

(d)  the right to confront and cross-examine adverse witnesses,

(e)  a 'neutral and detached' hearing body such as a traditional parole board, and

(f)   a written statement by the factfinders as to the evidence relied on and reasons

for re-imposing the parole condition if that is the decision of the hearing

officer(s).

*See id.*

In sum, the undersigned recommends that Wilson's motion for preliminary

injunction be granted, and that the parole condition be removed until a hearing that

adheres to the requirements set forth above can take place.

## VI.   Conclusion

For the reasons stated above, the undersigned RECOMMENDS that defendants'

motion to dismiss, (ECF No. 40), be DENIED, Wilson's motion for summary judgment,

(ECF No. 46), be DENIED, Wilson's motion for preliminary injunction, (ECF No. 29),

be GRANTED.  With regard to the preliminary injunction, the undersigned recommends

that Wilson's parole condition requiring sexual abuse prevention treatment be

discontinued until he is afforded a hearing that follows the minimum requirements of due

process, as outlined above.

Dated: May 16, 2024                               s/Kimberly G. Altman_____
Detroit, Michigan                                 KIMBERLY G. ALTMAN
                                                  United States Magistrate Judge

## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 16, 2024.

s/Misty Neely
Case Manager on behalf of
CAROLYN CIESLA

29