UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAVAN JERRELLE WILSON, SR.,

               Plaintiff,              Case Number 23-11666
                                      Honorable David M. Lawson
v.                                  Magistrate Judge Kimberly G. Altman

NATHANIEL SMITH, BRIAN SHIPMAN,
JEROME WARFIELD, SR., CRISSA
BLANKENBURG, and TIMOTHY FLANAGAN,

               Defendants.

_____/

**OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION, SUSTAINING AND OVERRULING CERTAIN OBJECTIONS, DENYING DEFENDANTS' MOTION TO DISMISS, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, WITHDRAWING REFERENCE, AND SCHEDULING STATUS CONFERENCE**

Michigan prisoner Javan Wilson filed a complaint without a lawyer's assistance alleging that the defendants — all prison officials with the Michigan Department of Corrections (MDOC) — violated his rights under the Due Process Clause by wrongfully classifying him as a sex offender and imposing institutional requirements upon him consistent with that classification. The Court referred the case to Magistrate Judge Kimberly G. Altman to conduct pretrial proceedings. Thereafter, the defendants filed a motion to dismiss. Wilson obtained legal representation, responded to the motion to dismiss, and filed a motion for summary judgment and a motion for a preliminary injunction. Judge Altman filed a report recommending that the dispositive motions be denied but that the Court grant a preliminary injunction suspending or eliminating the sex offender programing until a due process hearing on the classification could be conducted. Both

sides filed timely objections and follow-up responses, and the case is before the Court for fresh review of the issues raised by the objections.

I.

A.

Wilson was sentenced to prison after pleading guilty to assault with intent to commit unarmed robbery.  According to his complaint, when Wilson first arrived at the prison on January 18, 2018, he met with Classification Director Nathaniel Smith for a scheduled screening.  During the meeting, Smith classified Wilson as having a history of a sex offense, despite never having had a conviction of that type.  Wilson alleges that he verbally protested the classification during the screening to no avail.  That classification, he says, was consequential, since it required him to submit to certain sex offender programing, it determined housing placement, it affected his release on parole, and it was determinative of certain parole conditions.

That classification was not entirely arbitrary, however, and understanding the defendants' rationale requires examination of the factual background that can be gleaned from the record.

Wilson was charged in the Kalamazoo County, Michigan circuit court with two counts of first-degree criminal sexual conduct (CSC), assault with intent to commit unarmed robbery, assault by strangulation, and being a third habitual offender.  According to the state defendants, the charges arose from the plaintiff's attempted robbery of a prostitute.  The plaintiff filed a motion for preliminary injunction, and the defendants filed an opposition to that motion that included as exhibits portions of the plaintiff's prison medical and psychological records.  The defendants relied on those records as factual support for their arguments in opposition to the injunction motion and cited them again throughout their subsequent briefing, including in their objections to the report and recommendation.  Among other things, the records contain a risk assessment report dated

December 14, 2022, which included a narrative that the plaintiff conveyed to an MDOC psychological examiner, which casts some light on the underlying offense.  The evaluator's report states:

> Wilson indicates that he was planning on robbing the victim when he met up with her.  He stated that he was struggling with finances and thought that if he stole a prostitute's money it would help with funds.  He denies having a plan of sexually assaulting the victim until he got there and realized she did not have any money.  He indicates that he did what he thought he could do to hurt her and that was raping her.

Sexual Offense Risk Assessment (SORA) Form dated Dec. 14, 2022, ECF No. 31-6, PageID.238.  Wilson eventually pleaded guilty under a plea agreement that called for him to admit guilt to the unarmed robbery charge, with the other charges being dismissed.  He was sentenced to an indeterminate term of 4-½ to 30 years in prison.

Wilson was processed initially into the custody of the Michigan Department of Corrections (MDOC) in mid-January 2018 at the Charles E. Engler Reception and Guidance Center in Jackson, Michigan.  According to the complaint, "[o]n . . . January 18, 2018, Defendant Smith initially classifie[d] plaintiff as having a 'history' of a sex offense (that never occurred) based upon the dismissed CSC charges in the [presentence investigation report]."  Compl., ECF No. 1, PageID.9.  During the classification assessment, the "[p]laintiff verbally protested the check mark on the programs recommendation form and inmate basic information sheet, which indicate[d] [that he] has a 'history' of a sexual offense."  *Ibid.*  Smith responded "that the crime for which [the plaintiff was serving time] fits the description of a sexual assault," and he stated that the check mark indication would not be removed.

On February 27, 2018, Wilson was transferred to the Gus Harrison Correctional Facility to begin serving his sentence.  *Id.* at PageID.10.  "On March 7, 2018, during an orientation [and] classification meeting with the classification director B. Tuckerman," Wilson was given a copy of

MDOC form CSX 175, filled out on January 29, 2018, indicating a recommendation that he complete Michigan Sex Offender Programming (MSOP) treatment.  Plaintiff verbally objected, and Tuckerman stated she would "try and find some answers and get back to [him]."  *Ibid.*  On April 4, 2018, Tuckerman communicated to the plaintiff in writing that he had been placed on a waiting list to begin the MSOP programming, and that she could not give him any further details about the reason for the classification "due to healthcare privacy laws."  *Ibid.*  Tuckerman recommended that Wilson "contact healthcare to talk to a psychologist about [his] concerns."  *Ibid.*  On the following day, Wilson submitted a written request for a "formal administrative hearing" to challenge his assignment to the MSOP program.  However, the plaintiff says that no such hearing ever occurred.  *Id.* at 10-11.

On June 13, 2019, Wilson was transferred to the St. Louis Correctional Facility, and upon transfer he "was [] placed in the [Violence Protection Program (VPP)]."  *Id.* at PageID.11.  Wilson "successfully completed" the VPP programming, and on November 19, 2019 he was transferred to the Richard A. Handlon Correctional Facility (MTU).  *Ibid.*  While at MTU, Wilson had his first meeting with the Michigan Parole Board to consider his eligibility for parole.  *Ibid.*  During the interview, defendant Parole Board member Jerome Warfield "inquired about the dismissed CSC charges," and the plaintiff "denie[d] [the] allegations."  *Ibid.*  At the conclusion of the interview, Warfield said to Wilson that he had "absolutely no reason to keep [the plaintiff] incarcerated any longer," but that Warfield would need to order a "psychological evaluation" and request the preparation of a "Sex Offender Risk Assessment" (SORA) before making a final decision.  *Ibid.*  On June 23, 2021, Wilson met with the lead psychologist at MTU, Michael P. Moran.  Wilson says that he "reluctantly moved forward with the assessment," despite the fact that he was "unsure of its exact purpose."  *Id.* at 11-12.

On July 5, 2021, Wilson received written notice of a 12-month continuance of his consideration for parole, which allegedly stated "extremely ambiguous" reasons for the denial of release and included "vague recommendations for corrective actions" that "may facilitate release." *Id.* at 12. Wilson wrote to the Parole Board requesting more details about the reasons for the denial of parole, and he received a response stating that the board members believed that the plaintiff would "benefit from completing the MSOP program." *Ibid.* Wilson also requested and received a copy of the SORA evaluation report, which indicated that he was "scored [in the category of] well above average risk (level 4a)." *Ibid.*

The defendants submitted a Parole Board Notice of Decision dated June 3, 2022 stating that the request for parole on that occasion was continued for 12 months because "[t]he Parole Board lacks reasonable assurance that the prisoner will not become a menace to society or to the public safety." Notice of Decision dated June 3, 2022, ECF No. 31-5, PageID.235. The Notice identified the "reasons in support" of the action as (1) the nature of the conviction involving "assaultive behavior," victimization of a stranger, use of "excessive force," and use of a "dangerous weapon," (2) criminal history including use of weapons, felony assault convictions, and assault crimes, (3) "assaultive behavior" and new crimes committed during prior parole or probation terms, and (4) "personal history" including long term substance abuse. *Id.* at 235-36. Under "recommendations for corrective action which may facilitate release," the report suggested "[d]emonstrating responsible behavior by earning positive reports in any programs you may be involved in." *Id.* at 236. Absent from the report is any allusion to a "sex offender" designation, commission of a sex crime, or any recommendation or requirement to participate in MSOP/MSAPP programming.

- 5 -

On March 10, 2022, the plaintiff was transferred to the Carson City Correctional Facility, and there he was "placed and housed in the sex offender unit (D-unit) for over a year." *Id.* at PageID.12. Wilson filed a written grievance complaining that he was being placed in a sex offender unit and required to complete the MSOP despite never being convicted of a sex crime. *Ibid.* Wilson also consulted psychologist Eric Fuller, who told him that he believed Wilson would benefit from completing the MSOP programming due to the above average risk level noted on the earlier SORA report. *Id.* at 12-13.

On May 4, 2022, the plaintiff had a second hearing before the Parole Board, during which board member Crissa D. Blankenburg again "inquired about the dismissed CSC charges," and the plaintiff again denied the allegations. *Id.* at 13. The plaintiff subsequently received another 12-month continuance notice, stating the same grounds as the previous denial of parole, which the plaintiff says is based on an "unwritten rule" that the Parole Board follows of denying parole to inmates who fail to complete recommended programming. *Ibid.* On September 6, 2022, the plaintiff filed another grievance "complaining about the same issues" concerning the sex offender classification and MSOP requirement, which was "exhausted and rejected at all 3 steps." *Id.* at 14. According to the complaint, the MSOP program later was redesignated as the Michigan Sexual Assault Prevention Program (MSAPP). *Ibid.*

The plaintiff initially filed his complaint in this case while he still was incarcerated, and his pleading framed his due process claim as challenging the requirement that he complete the MSOP program in order to obtain release on parole. However, it is undisputed that the circumstances have changed significantly since the suit was commenced. First, the plaintiff began participating in the MSOP programming on November 17, 2022, and he successfully completed the program on May 18, 2023. *See* Treatment Record, ECF No. 31-6, PageID.244. Second, the

plaintiff was released on parole on September 6, 2023.  *See* Inmate Status Report, ECF No. 31-2, PageID.222.  Third, the older program known as "MSOP" was overhauled and redesignated as the Michigan Sexual Abuse Prevention Program (MSAPP).  *See* Michigan Department of Corrections: Michigan Sexual Abuse Prevention Program (MSAPP), https://perma.cc/LTJ3-PASU.  Finally, it is undisputed that, since his release on parole, the plaintiff has been required to attend ongoing weekly MSAPP sessions while under supervision, and that condition continues in force today.

The complaint alleges that the plaintiff's right to procedural due process under the Fourteenth Amendment was violated by the denial of a "formal administrative hearing" concerning his sex offender classification, and he seeks declaratory and injunctive relief to stop MDOC from continuing to classify him as a sex offender and requiring him on an ongoing basis to engage in the MSAPP treatment program while under parole supervision.

B.

The plaintiff filed his complaint on July 12, 2023, pleading a single claim for denial of procedural due process via 42 U.S.C. § 1983.  The matter was referred to Magistrate Judge Kimberly G. Altman to conduct all pretrial proceedings.  On November 6, 2023, the magistrate judge issued a scheduling order establishing a discovery completion date of March 4, 2024, and a deadline for filing dispositive motions on April 4, 2024.  The plaintiff proceeded through much of the early litigation of the case without the assistance of a lawyer.  However, counsel filed an appearance for him on December 12, 2023.

The defendants never answered the complaint.  Instead, in February 2024 they filed a tardy motion to dismiss.  Before that, however, the plaintiff filed a motion for preliminary injunction on November 8, 2023, in which he sought an order requiring the defendants to conduct an administrative hearing before classifying him as a sex offender.  The defendants filed an opposition

- 7 -

to the preliminary injunction motion and tendered an evidentiary record consisting of excerpts from the plaintiff's prison records.  They highlighted evidence that (1) the plaintiff admitted raping the victim of the attempted robbery after he became angry because she didn't have any money (which the plaintiff denies), (2) the parole board's denial stated other reasons for the deferral of release unrelated to MSAPP program completion, including the plaintiff's history of substance abuse, past failures to comply with supervision conditions, and a lengthy criminal history including prior assault crimes, (3) notwithstanding all of the above, the plaintiff eventually successfully completed the MSAPP program and was released on parole on September 6, 2023, and (4) the plaintiff has not been required to register as a sex offender and the sole ongoing requirement is that he continue to participate in MSAPP programming while under parole supervision.

The defendants argued that the plaintiff lacks standing to pursue claims relating to his custodial classification and programming decisions, since he "voluntarily" elected to participate in the MSAPP program, completed the program successfully, and was released on parole.  They also insisted that the plaintiff had no protected liberty interest either in a release on parole or in not being classified as a sex offender.  After plaintiff's counsel appeared in the case, he filed a reply brief refuting these points.

The defendants repeated many of these arguments in their February 2024 motion to dismiss, adding that the plaintiff lacks standing to pursue any claims for "record expungement" because he has not identified any protected liberty interest in having particular information struck from his prison records.

Wilson then filed a motion for partial summary judgment seeking a determination of liability on the due process claim in which he principally relied on *Harper v. Arkesteyn*, No. 19-1928, 2020 WL 4877518 (6th Cir. Apr. 28, 2020), and the line of cases cited in that opinion where

- 8 -

courts recognized that a prison inmate has a liberty interest in not being classified as a sex offender when he has not been convicted of a sex crime. He argued that the sex offender classification brought with it institutional consequences that he should not have had to bear unless he had a formal hearing where he could challenge the classification.

The defendants' response to the summary judgment motion asserted that the motion itself raised new claims not previously pleaded in the complaint, there is no protected liberty interest where the challenge is to denial of parole under an indeterminate sentencing scheme where parole is entirely discretionary, and there are questions of fact about (a) whether and to what extent the plaintiff has been "stigmatized" by any information that could be obtained publicly about his parole status, and (b) whether the plaintiff was "compelled" to participate in MSAPP programming in order to obtain parole.

C.

On May 16, 2024, the magistrate judge issued a report recommending that (1) the defendants' motion to dismiss should be denied, (2) the plaintiff's motion for partial summary judgment also should be denied, and (3) the plaintiff's motion for a preliminary injunction should be granted, and the defendants should be enjoined from classifying him as a sex offender until he is afforded an administrative hearing meeting minimum due process requirements. The magistrate judge rejected all of the defendants' arguments for dismissal and concluded that (1) the plaintiff's claims are not moot because he reasonably could expect to be placed under the same sex offender classification if his parole is revoked, (2) the cases cited by the defendants are inapposite because the plaintiff does not (at least presently) directly attack a denial of discretionary parole, but instead contends that his liberty interest is violated by mandating sex offender programming as a condition of his continued release on parole, (3) there is ample authority including the Sixth Circuit's *Harper*

- 9 -

decision recognizing the right to be free from a sex offender designation, including the requirement

of sex offender programming while on parole, without adequate administrative process preceding

the classification, and (4) contrary to the defendants' protestations, the plaintiff sufficiently has

alleged that he suffered real consequences from the sex offender designation, including being

either formally or informally labeled as a "sex offender" through the classification process, being

housed in a sex offender unit, and being subjected to mandatory sex offender programming (even

if his participation nominally was "voluntary") as a condition of initial and continued release on

parole.

However, the magistrate judge believed that additional discovery is warranted to resolve

lingering questions of fact about the level of "intrusiveness" of the presently imposed conditions

of parole to determine whether they are as severe as the conditions in other cases that found an

invaded liberty interest.  Nonetheless, she concluded that the plaintiff has demonstrated a strong

likelihood of success on the merits and satisfied the other factors favoring an injunction to forestall

the ongoing harm attached to his designation as a sex offender and the requirement to participate

in sex offender programming, so that an injunction should be issued to suspend the sex offender

classification and the institutional consequences until a proper due process hearing can be held.

## II.

The defendants lodged several objections to the recommendation denying their motion to

dismiss and granting a preliminary injunction.  The objections are premised mainly on their

misreading of the complaint to comprise a claim for wrongful denial of parole.  First, they argue

that the magistrate judge erroneously considered facts beyond the pleadings in order to infer that

the plaintiff has standing to challenge the conditions of his parole.  Relatedly, they contend that

the magistrate judge erred by relying on facts first asserted in the plaintiff's motion for summary

judgment and not discussed in the complaint when she recommended that the motion for preliminary injunction should be granted.  Second, they dispute the magistrate judge's reasoning that they say failed to recognize the constitutionally significant distinction between conditions of confinement and conditions of parole, and they complain that the magistrate judge thereby "invent[ed] a new constitutional right to immediate release on parole" for any person required to participate in "sexual abuse" treatment, despite the fact that conditioning release on many other forms of rehabilitative programming routinely is required for parole eligibility.  Third, they object to the magistrate judge's core conclusion that there is a protected liberty interest in "not being labeled a sex offender."  Fourth, they argue that the magistrate judge erroneously concluded that the plaintiff had made out a strong likelihood of success on the merits despite disclaiming any factual conclusion about the significance of any alleged consequences of the sex offender designation in terms of ongoing "stigma" suffered by the plaintiff.

The plaintiff filed objections to the denial of his motion for summary judgment.  He argued that the magistrate judge erred by finding that additional discovery is warranted, and the defendants' presentation fails to meet the requirements of Federal Rule of Civil Procedure 56(f) for establishing a need for additional discovery, since the information that the defendants say they need about "conditions of the plaintiff's parole" necessarily would come from the defendants' own records.  Wilson also objects to that part of the report recommending a preliminary injunction compelling an administrative hearing by the Parole Board, since such a hearing would not be conducted by a neutral decision maker.

When a party files timely objections to a report and recommendation, the court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P.

72(b)(2), (3) (requiring court review of "any part of the magistrate judge's disposition *that has been properly objected to*") (emphasis added); *United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  This fresh review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part.  28 U.S.C. § 636(b)(1).

But this review is not plenary.  "The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985).  As a result, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Tchrs. Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

Objections to a magistrate's report and recommendation must be "specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Parties may not raise new claims or theories not raised previously.  *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (explaining that the Magistrate Judges Act does not permit "parties to raise at the district court stage new arguments or issues that were not presented to the magistrate").

A.  Justiciability Arguments

The defendants argue in their motion to dismiss that Wilson lacks standing to pursue his claims because he voluntarily submitted to the sex offender program and his claims are moot because he has been admitted to parole.  The magistrate judge disagreed, and the defendants object to her conclusions.

It is well settled that federal courts have the authority under Article III of the Constitution to adjudicate only actual "Cases" and "Controversies."  U.S. Const. Art. III, § 2.  A component of that prescription is that a plaintiff must have standing to press his claims.  To establish standing, a plaintiff must demonstrate that he has suffered an actual or imminent, concrete and particularized injury; that injury must be fairly traceable to the conduct of the defendants; and it must be likely that a favorable judicial decision would provide relief.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  The defendants do not argue that the complaint fails to include sufficient allegations to meet those requirements.

However, if during the pendency of a case, an event occurs that makes it impossible for a court to grant any relief to the prevailing party, the case must be dismissed.  *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992); *Edwards v. Dewalt*, 681 F.3d 780, 788 (6th Cir. 2012).  That is because under Article III, "a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'"  *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)).  The Court "lacks jurisdiction to consider any case or issue that has 'lost its character as a present, live controversy' and thereby becomes moot."  *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009) (citing *Hall v. Beals*, 396 U.S. 45, 48 (1969)); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as the doctrine of standing

set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") (quotation marks omitted).  "Because the exercise of judicial power under Article III of the Constitution depends on the existence of a live case or controversy, mootness is a jurisdictional question."  *Demis*, 558 F.3d at 512 (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).

The defendants' arguments that the magistrate judge improperly looked beyond the complaint to determine justiciability, and that the case was not moot despite parole being granted, fail for two reasons.  First, a motion to dismiss for mootness or lack of standing properly is considered under Federal Rule of Civil Procedure 12(b)(1) as a challenge to subject matter jurisdiction.  *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).  When considering such a motion, the Court has "wide discretion" to take in evidence beyond the pleadings, including affidavits and documents "to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  Consideration of this aspect of the defendants' motion to dismiss is not confined to the pleadings.

Second, the defendants' argument misconstrues the nature of the plaintiff's claim.  Wilson expressly disclaims any assertion of a constitutional right to parole.  Instead, he alleges that he was classified improperly as a "sex offender" without an adequate opportunity to challenge the designation, and that consequences have flowed from that designation, including the delay or denial of parole at one point, but also the imposition of an ongoing parole condition requiring him to attend certain programming or risk being returned to prison.  The alleged injury is personal to the plaintiff and is not hypothetical, and it is undisputed that the allegedly improper programming attendance requirement continues to this day.  The Court could deliver relief by issuing a ruling

invalidating the condition of release or suspending it pending a due process hearing.  That is all

that is required for a finding that the case presents a live controversy amenable to adjudication.

The defendants' objections on justiciability grounds will be overruled.

### B.  Protected Liberty Interest

The defendants' most substantive objection challenges the magistrate judge's finding (and

Wilson's basic contention) that Wilson has an interest worthy of protection under the Due Process

Clause.  To prevail on a procedural due process claim, the plaintiff must show "(1) that [he has]

been deprived of a cognizable liberty interest, and (2) that such deprivation occurred without

adequate procedural protections."  *Schulkers v. Kammer*, 955 F.3d 520, 545-46 (6th Cir. 2020)

(citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)).

A person convicted of a crime in a proceeding incorporating the procedural protections of

the Sixth Amendment is subject to the curtailment of his liberty, but "a prisoner is not wholly

stripped of constitutional protections when he is imprisoned for crime." *Wolff v. McDonnell,* 418

U.S. 539, 555 (1974).  Nonetheless, a prisoner's liberty interest is subject to "the nature of the

regime to which [he has] been lawfully committed."  *Id.* at 556.  In prison, that may include

conditions of confinement that require rehabilitative programing, certain housing restrictions, and

prison discipline.  And "changes in the conditions of confinement having a substantial adverse

impact on [a] prisoner are not alone sufficient to invoke the protections of the Due Process Clause

as long as the conditions or degree of confinement to which the prisoner is subjected is within the

sentence imposed upon him." *Vitek v. Jones,* 445 U.S. 480, 493 (1980) (cleaned up).

But a prisoner still may have a protectable liberty interest relating to certain conditions of

confinement, which may arise from two sources.  It may result from statutes and regulations that

regularly bestow benefits to prisoners, the deprivation of which "imposes atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). For instance, a prisoner does not have a constitutional right to be released on parole, *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987); *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), but if the state creates a parole system and routinely grants parole, a parolee has a liberty interest in that status and the state may not revoke parole without providing procedural due process, *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Similarly, prisoners are not entitled to good time credits against their sentence, but if the state enacts a system of conferring such credits, a prisoner has a liberty interest that prevents revocation without due process. *Wolff*, 418 U.S. at 558 (prisoners may not be deprived of statutory "good-time credits" without due process).

In addition, a prisoner has a liberty interest that protects him from a change in his conditions of confinement that is so severe that it essentially exceeds the sentence imposed by the court, that is, when there are "consequences visited on the prisoner [that] are qualitatively different from the punishment characteristically suffered by a person convicted of crime." *Vitek*, 445 U.S. at 493. Courts refer to the first as a state-created liberty interest, and the second as a free-standing liberty interest. *Renchenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010).

Wilson does not have a state-created liberty interest that prevents the state from classifying him as a sex offender and subjecting him to remedial programing based on all available information in the presentence investigation report and intake interviews. To the contrary, state law requires that all information relating to the defendant's background and details of the charges is to be considered when classifying an incoming inmate. *See Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999) ("Alabama has not created a liberty interest in not being classified as a sex offender absent a conviction for a sex related crime. Indeed, the ADOC regulations specifically

- 16 -

declare otherwise.  In pertinent part, the regulations provide that "inmates with two or more arrests of record for sex crimes for which the disposition is unknown or given as dismissed, no billed, nolle prossed, etc., will be construed as sex offenders for the purpose of classification.")

Michigan statutes and regulations state that a Presentence Investigation Report (PSIR) must be prepared before any defendant who has been convicted of a felony is sentenced.  Mich. Comp. Laws § 771.14(1); MDOC Policy Directive (PD) 06.01.140 (Eff. June 24, 2024), https://perma.cc/FPB8-WE9Z.  The report must include, among other things, "[a]n evaluation of and a prognosis for the person's adjustment in the community based on factual information contained in the report."  Mich. Comp. Laws § 771.14(2).  "The court shall permit the prosecutor, the defendant's attorney, and the defendant to review the presentence investigation report before sentencing," Mich. Comp. Laws § 771.14(5), and "[a]t the time of sentencing, either party may challenge, on the record, the accuracy or relevancy of any information contained in the presentence investigation report," Mich. Comp. Laws § 771.14(5), (6).  The defendant is entitled to a copy of the report at least two days before sentencing.  Mich. Comp. Laws § 771.14(7).  And if the defendant is sentenced to prison, "the presentence investigation report and, if a psychiatric examination of the person has been made for the court, a copy of the psychiatric report shall accompany the commitment papers."  Mich. Comp. Laws § 771.14(9).  Additionally, "[a] prisoner under the jurisdiction of the department of corrections shall be provided with a copy of any presentence investigation report in the department's possession about that prisoner . . . not less than 30 days before a parole interview is conducted."  Mich. Comp. Laws § 771.14(10).

The PSI report is required to contain "information relevant to the offender's background" including (1) an "objective description of the offense, including the name and age of the victim," (2) "[t]he offender's description of the offense and the circumstances surrounding it, as well as

any other statement the offender requests to make," (3) "a description of the offender's adult and juvenile criminal history," (4) "[a] written impact statement or summary of an oral impact statement submitted by the victim, if requested to be included by the victim," (5) "[u]nless included in the victim's impact statement, the financial, social, psychological, or physical harm suffered by any victim of the offense," and (6) "[a] description and status of all criminal charges that are pending against the offender at the time of the PSI."   PD 06.01.140(G)(1)-(6).   This policy mandates that "the PSI reports are clear, concise, and accurate," that "[r]epetitive information shall be avoided," and that "[a]ll sources of information shall be documented in the report." PD 06.01.140(I).

The MDOC Policy Directives also specify the procedure for classification and assignment to prison programming for all new inmates.  A Classification Director interviews each prisoner within seven days of arrival "to determine initial program classification. The prisoner's institutional files must be reviewed prior to conducting the interview."  PD 05.01.100(I) (Eff. Jul. 17, 2023), https://perma.cc/WQ4K-S6SX.  "During initial classification at each facility, prisoners shall be classified to work and program assignments using the Program Classification Report (CSX-175) and case plan and referred to programs in accordance with the program recommendations established at the reception facility in accordance with PD 04.01.105 'Reception Facility Services.'"  PD 05.10.100(J).  "Prisoners received at a reception center with a new sentence to be served with the Department should be accompanied by . . . [a] copy of the Judgment of Sentence that is signed by the Judge and contains the official county seal [and] [o]ne copy of the Pre-Sentence Investigation (PSI) report as set forth in PD 06.01.140 'Pre-Sentence Investigation and Report,'" and "[a] copy of the PSI report shall be provided to the prisoner, with

receipt documented on the Basic Information form (CSX-104)." PD 04.01.105(G) (Eff. Sept. 25, 2023), https://perma.cc/KZF7-FLX8.

The plaintiff alleges in his complaint that the information relied upon for his initial classification was included in a PSI report. Compl., ECF No. 1, PageID.9. A copy of that report is not in the record. But the plaintiff has not alleged that any information contained in the report was inaccurate. It is likely that the report included statements from the robbery victim and information about the criminal sexual conduct charges that were dismissed at sentencing as part of the plea agreement, as the regulations require. Moreover, the relevant state laws and regulations afforded a full opportunity for the plaintiff to challenge any purported "inaccuracies" in such a report on the record, in a fully adversarial setting with all of the attendant procedural rights and the assistance of counsel, during a sentencing hearing in the trial court. *See* Mich. Comp. Laws § 771.14; MDOC Policy Directive 06.01.140. And the plaintiff would have had the report made available to him 30 days before a parole hearing. Mich. Comp. Laws § 771.14(5), (7); Mich. Comp. Laws § 771.14(10).

MDOC Policy Directives explicitly contemplate that prisoners will be assigned to programming based on information gleaned from the PSI report. The plaintiff has not identified any authority in state law establishing that he had any state-created expectation that he would *not* be classified by prison authorities based on information memorialized in the PSI report, including any information about the nature of the conduct in the underlying offense, the victim's own account of the crime, and the existence or nature of other criminal charges, regardless of disposition, all of which the plaintiff had ample opportunity to challenge at the sentencing hearing. In classification regimes prescribing this level of detail, there is no state-created liberty interest in not being classified on the basis of any information reported in the PSI report. *Kirby*, 195 F.3d at 1291;

*Chambers v. Colorado Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (holding that there was no state-created liberty interest in not being labeled a sex offender, since the appellant was classified in accordance with the prevailing regulations).

Many courts, however, have recognized that a prisoner has a free-standing liberty interest in not being classified as a sex offender when the offense of conviction is not a sex crime.  The cases usually begin with a discussion of *Vitek v. Jones*, where the Supreme Court held that "the involuntary transfer of a [] state prisoner to a mental hospital implicates a liberty interest that is protected by the Due Process Clause," because "a prisoner could reasonably expect that he would not be transferred to a mental hospital without a finding that he was suffering from a mental illness for which he could not secure adequate treatment in the correctional facility."  445 U.S. at 487-88.  The Court explained that, because "[t]he loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement[,] . . . a convicted felon [] is entitled to the benefit of procedures appropriate in the circumstances before he is found to have a mental disease and transferred to a mental hospital."  *Id.* at 492-93.

Extrapolating from the holding of *Vitek*, the courts of appeals in the Third, Fifth, Tenth, Eleventh, and Ninth Circuits all have held that the classification of an inmate as a "sex offender" where he has not been convicted of a "sex offense" implicates a free-standing liberty interest that may trigger due process protections.  *Renchenski*, 622 F.3d at 328 (3d Cir.) ("We . . . join the Fifth and Eleventh Circuits in holding that the stigmatizing effects of being labeled a sex offender, when coupled with mandatory behavioral modification therapy, triggers an independent liberty interest emanating from the Due Process Clause of the Fourteenth Amendment.") (collecting cases and citing *Coleman v. Dretke*, 395 F.3d 216 (5th Cir. 2004); *Chambers*, 205 F.3d at 1237 (10th Cir.); *Kirby*, 195 F.3d 1285 (11th Cir.); and *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997)).

- 20 -

In *Neal v. Shimoda*, the plaintiff had been charged with robbery, kidnapping, and violent sexual assault but entered a guilty plea under an agreement that resulted in the dismissal of the sex crime charges. The Hawaii department of corrections designated him as a sex offender, which impacted his security classification and prompted assignment to sex offender programing. The plaintiff objected to the designation and refused to complete the sex offender program or consent to treatment, resulting in the denial of parole. The court held that the plaintiff had a free-standing liberty interest in avoiding that classification without adequate procedural protections. 131 F.3d at 831. The court explained that "[t]he liberty interest at stake in this case is similar in form and scope to the interest at stake in *Vitek*: the stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections." *Id.* at 830.

In *Kirby v. Siegelman*, the Eleventh Circuit court of appeals held that the plaintiff did not have a state-created liberty interest in avoiding a sex offender classification when he was not convicted of a sex crime, although he had been charged with sex offenses in his past. 195 F.3d at 1291. But, relying on *Vitek*, the court held that he had a free-standing liberty interest under the Due Process Clause to avoid that label, which in his case affected his security placement within the prison system. The court of appeals determined that "the stigmatizing effect of being classified as a sex offender constitutes a deprivation of liberty under the Due Process Clause," and, accordingly, "[a]n inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender. *Id.* at 1292.

That reasoning was replicated by the Tenth Circuit in *Chambers v. Colorado Department of Corrections*. In that case, the plaintiff was designated an "S-2 sex offender," which channeled

him into prescribed sex offender treatment.  The plaintiff did not participate in the treatment, and

when his institutional case was reevaluated, his case manager recommended a reduction in his

good time credits because of his nonparticipation.  205 F.3d at 1238-39.  Again, although the court

found no state-created liberty interest, it held that the loss of good time credits implicated the

plaintiff's free-standing "liberty interest in not being labeled a sex offender.  And, it is the label

replete with inchoate stigmatization — here based on bare allegations which are vigorously denied

and which have never been tested — which requires some procedural scrutiny."  *Id.* at 1242.

Turning to *Coleman v. Dretke*, the Fifth Circuit reversed the denial of a habeas petition and

remanded to the district court for further proceedings after holding that "the state must provide due

process before imposing sex offender registration and therapy as conditions to the release on

mandatory supervision of a prisoner who has never been convicted of a sex crime."  395 F.3d at

219.  There, while the plaintiff was on parole for a burglary conviction, he was indicted for sexually

assaulting a child.  He pleaded guilty to a misdemeanor assault charge and was returned to prison

on his parole violation.  When he was released on parole again, living in a halfway house, the

parole panel imposed additional conditions that Coleman register as a sex offender and participate

in sex offender therapy.  He registered but did not enroll in the therapy, and his parole was revoked.

*Ibid.*  Relying on *Vitek*, the court held that Coleman was entitled to procedural protections to

protect his free-standing liberty interest in avoiding the "stigmatizing classification" and "sex

offender therapy[] involving intrusive and behavior-modifying techniques."  *Id.* at 223.  The court

observed that the sex offender therapy could "include interventions with psychopharmacological

agents, polygraph exams to determine sexual history, and use of penile plethysmographs to modify

deviant sexual arousal and enhance appropriate sexual arousal."  *Id.* at 224.  The court held that

"the Due Process Clause, as interpreted in *Vitek*, provides Coleman with a liberty interest in

freedom from the stigma and compelled treatment on which his parole was conditioned, and the state was required to provide procedural protections before imposing such conditions." *Id.* at 222.

The plaintiff in *Renchenski v. Williams* had been sentenced to life without parole for the brutal murder of a female, which included evidence of sexual assault and mutilation. 622 F.3d at 320. Although not charged with a sex crime, the plaintiff's PSI report included "sexual" as a "past or present problem area." *Ibid.* Prison officials later granted his request to delete that designation, but after he was transferred to a different prison, the classification was reinstated and the plaintiff was "enrolled . . . in a slew of prison programs, including sex offender orientation, sex offender core, and sex offender maintenance." *Ibid.* The Third Circuit "join[ed] the Fifth and Eleventh Circuits in holding that the stigmatizing effects of being labeled a sex offender, when coupled with mandatory behavioral modification therapy, triggers an independent liberty interest emanating from the Due Process Clause of the Fourteenth Amendment." *Id.* at 328. The court prescribed the process due the plaintiff as including written notice, disclosure of evidence, a hearing where the plaintiff could offer evidence in rebuttal, the opportunity to confront and cross-examine witnesses, an independent decisionmaker, and a written and reasoned decision. *Id.* at 331-32.

The Sixth Circuit has not addressed whether a prisoner has a free-standing liberty interest in not being classified as a sex offender when the offense of conviction is not a sex crime. However, in *Harper v. Arkesteyn*, No. 19-1928, 2020 WL 4877518 (6th Cir. Apr. 28, 2020), the court acknowledged the line of authority discussed above and, concluding that the district court had erred by misconstruing the plaintiff's classification claim as one merely challenging the plaintiff's designation to a place of confinement, remanded the case for further consideration of the due process claim. *Id.* at *3. On remand, the magistrate judge suggested that the plaintiff, a prisoner who had been classified as a sex offender and possibly compelled to participate in sex

offender therapy, had a liberty interest that triggered required procedural protections of the Due Process Clause.  *Harper v. Arkesteyn*, No. 19-11106, 2022 WL 2338578, at *16 (E.D. Mich. June 28, 2022), *R&R adopted* 2022 WL 3446198 (E.D. Mich. Aug. 17, 2022).

The cases discussed above establish that a prisoner who has not been convicted of a sex crime has a free-standing liberty interest in not being labeled as a sex offender because that designation causes stigmatization and can result in institutional consequences that are qualitatively different from the nature of the punishment that normally attends a conviction.  *See Wolff,* 418 U.S. at 556 (stating that a prisoner's liberty interests are subject to "the nature of the regime to which they have been lawfully committed").  The "plus" part of this "stigma plus" regime has included special housing designations for sex offenders, heightened security classification, invasive sex offender therapy, and mandatory sex offender counseling when nonparticipation might lead to denial or revocation of parole or the loss of good time credits.

The defendants base their motion to dismiss in part on the argument that the plaintiff has not stated a viable claim because he has no protected liberty interest in release on parole or the conditions of parole.  But as mentioned earlier, that is not the gravamen of the plaintiff's claim.  He challenges the sex offender designation itself.  To survive the part of the defendants' motion brought under Federal Rule of Civil Procedure 12(b)(6), the "complaint [must] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A "claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

- 24 -

Accepting Wilson's factual allegations as true, and reading his complaint in the light most favorable to him, *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 252 (6th Cir. 2020), it is apparent that Wilson has alleged facts from which a reasonable factfinder could conclude that his sex offender classification by the defendants implicated a free-standing liberty interest.  He alleges in his complaint that at his initial screening, he was designated on prison forms as having a history of sex offenses, which he protested.  Compl., ECF No. 1, PageID.9.  When he was transferred to a different prison about a month later, his intake papers recommended assignment to Michigan Sex Offender Programming (MSOP) treatment (later redesignated as the Michigan Sexual Assault Prevention Program (MSAPP)), at which point he protested again and asked for a formal administrative hearing.  *Id.* at PageID.10.  He was transferred two more times, and at the fourth institution he met with the Parole Board.  During the interview, a board member asked about the criminal sexual conduct charges, and Wilson was told that a "Sex Offender Risk Assessment" (SORA) would have to be completed before a final parole decision would be made.  *Id.* at 11-12.  Wilson complied.  The parole decision was continued for a year.  Wilson alleges that he was transferred to the Carson City Correctional Facility where he was housed in the sex offender unit for over a year.  *Id.* at PageID.12.  He alleges that at a second Parole Board interview, a board member again inquired about the sex crime charge, and his parole decision was continued for another year.  The plaintiff maintains that the decision was based on an "unwritten rule" that the Parole Board follows of denying parole to inmates who fail to complete recommended programming.  *Id.* at 13.

Wilson has alleged that he suffered the stigma of being classified a sex offender despite not having been convicted of a sex crime, and he has alleged that the classification has caused consequences relating to his release on parole, mandated sex offender programing, and housing

placement. These allegations are sufficient to establish a free-standing liberty interest that cannot be abridged without adequate procedural protection.

## C. Adequate Procedures

Once a protected liberty interest has been identified, the analysis turns to whether the plaintiff was afforded sufficient procedures to allow a fair determination that deprivation of that interest is justified. The inquiry focuses on whether the process afforded the complainant constitutionally satisfactory notice of the reason for the impending deprivation and an opportunity for his objections to be heard. Other than giving a person "notice of the case against him and [an] opportunity to meet it," there are no hard and fast rules that prescribe the adequacy of process demanded by the Constitution. *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-172 (1951) (Frankfurter, J., concurring)) (cleaned up). Rather, the requirements of due process "are fluid and fact dependent." *Shoemaker v. City of Howell*, 795 F.3d 553, 559 (6th Cir. 2015) (citing *Mathews*, 424 U.S. at 334). The level of formality depends on a variety of factors, including the claimant's interest affected by the government action, the risk of a mistake causing deprivation, the value of additional safeguards, and the fiscal and administrative burdens additional process might bring. *Mathews*, 424 U.S. at 335 (citing *Goldberg v. Kelly*, 397 U.S. 254, 263-271 (1970)). But in the end, "the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error." *Greenholtz*, 442 U.S. at 13.

The cases considering improper prisoner sex offender designation generally do not mandate a formal hearing process, but "minimum procedures" include

> (1) written notice to [the prisoner] that Defendants are considering classifying him as a sex offender and mandating his participation in [sex offender therapy]; (2) a hearing, held sufficiently after the notice to permit [the prisoner] to prepare, which includes: disclosure of the evidence Defendants would rely upon for the

classification, and an opportunity for [the prisoner] to be heard in person and to present documentary evidence; (3) an opportunity to present witness testimony and to confront and cross-examine witnesses called by Defendants, except upon a finding, not arbitrarily made, of good cause for not permitting such presentation, confrontation, or cross-examination; (4) administration of the hearing by an independent decisionmaker; (5) rendering of a written statement by the decisionmaker as to the evidence relied on and the reasons for [the prisoner]'s classification; and (6) [e]ffective and timely notice of all the foregoing rights. The process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

*Renchenski*, 622 F.3d at 331-32.

Wilson alleges in his complaint that his initial designation as having a history of sex offenses occurred during a screening session, that he objected then and several times thereafter to the designation to no avail, that he requested a formal administrative hearing to contest the designation, that he received no hearing, and that he filed grievances over the destination and pursued them through the appropriate stages.  His complaint sufficiently pleads that he was deprived of a liberty interest without adequate procedural due process.

The magistrate judge's determination that the complaint states a viable claim was correct, and the defendants' objections to that determination will be overruled.

### D.  Plaintiff's Motion for Summary Judgment

Wilson filed a motion for summary judgment as to liability on his due process claim arguing that the information submitted in the record and which may be gleaned from judicial notice of pertinent state statutes and regulations demonstrates as a matter of law that he has been deprived of a liberty interest without due process.  The magistrate judge recommended that the motion be denied because fact issues remain about level of intrusiveness and mandatory nature of the sex therapy programming, and additional discovery may be required.  Wilson objects because the defendants had adequate time to conduct discovery and failed to take advantage of it.  He also argues that he has provided a sufficient description in his declaration of the intrusiveness of the

MSAPP programming as a parole condition by stating that a feature of the program is that he must admit to committing a sex crime that he did not commit.

When the party moving for summary judgment also bears the ultimate burden of persuasion, the movant's affidavits and other evidence not only must show the absence of a material fact issue, they also must carry that burden. *Vance v. Latimer*, 648 F. Supp. 2d 914, 919 (E.D. Mich. 2009); *see also Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992); *Stat–Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997) (stating that where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense"). The plaintiff therefore "must sustain that burden as well as demonstrate the absence of a genuine dispute. Thus, [he] must satisfy both the initial burden of production on the summary judgment motion — by showing that no genuine dispute exists as to any material fact — and the ultimate burden of persuasion on the claim — by showing that it would be entitled to a directed verdict at trial." William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477-78 (1992) (footnotes omitted).

As the magistrate judge correctly pointed out, Wilson's motion papers do not establish by a preponderance of evidence that he was coerced into completing MSAPP treatments while in prison. And he has not described the features of that program in sufficient detail to allow a conclusion as a matter of law that its intrusiveness is on a par with programs described in the other cases finding a free-standing liberty interest.

Wilson responds that the program on which his parole is conditioned requires him to admit to committing a sex crime. The problem with that contention, however, is that it is not pleaded in his complaint. That is understandable, since Wilson was released on parole after he filed his

lawsuit.  But he has not sought to supplement or amend his complaint to include the fresh allegations, even though he is now represented by counsel.  "Parties who seek to raise new claims at the summary-judgment stage must first move to amend their pleadings under Federal Rule of Civil Procedure 15(a) before asserting the claims in summary-judgment briefing." *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019) (citations omitted).  The rationale behind that rule generally is to avoid "unfair surprise" to the responding party.  *Ibid.*  That reasoning likely loses force here, since the defendants no doubt are fully aware of the nature of the programs they administer, and if not, they had four months to conduct discovery.  Nevertheless, "[t]he fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  If the plaintiff intends to rely on parole conditions to enhance the stigmatizing effect of the sex criminal designation to support the existence of a protectable liberty interest, then he should seek to amend or supplement his pleadings.

Although the defendants' desire to conduct discovery was not a proper basis to deny the plaintiff's motion for summary judgment, the magistrate judge correctly found that fact issues and unpleaded claims preclude a judgment on liability as a matter of law in the plaintiff's favor.  The plaintiff's objection will be overruled.

### E.  Motion for Preliminary Injunction

The defendants object to the recommendation to grant the motion for a preliminary injunction because the magistrate judge relied on facts that were not alleged in the complaint, and because they believe that the magistrate judge incorrectly concluded that the plaintiff demonstrated a strong likelihood of success on the merits.

Rule 65 of the Federal Rules of Civil Procedure authorizes the issuance of preliminary injunctions. When a preliminary injunction is requested, the Court weighs the following factors: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent [an injunction], (3) whether granting the [injunction] would cause substantial harm to others, and (4) whether the public interest would be served by granting" injunctive relief. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (quotation marks omitted). Although courts describe the inquiry as a balancing test, *see Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007), demonstration of a strong likelihood of success generally is a predominating factor, *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020); *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014) ("the likelihood of success on the merits often will be the determinative factor."). "[T]he party seeking a preliminary injunction bears the burden of justifying such relief." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 554 (6th Cir. 2021) (quoting *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015)).

The magistrate judge, acknowledging that the plaintiff's proofs fell short of establishing an entitlement to summary judgment, found nonetheless that he demonstrated a "high" likelihood of success because he had to submit to sex abuse prevention treatment as a parole condition. Those allegations were not part of the complaint. And Wilson has not described in any level of detail the nature of the sex abuse therapy that he was required to receive in prison or currently is receiving on parole. Surviving a motion to dismiss the complaint does not necessarily equate to showing a strong likelihood of success on the merits of a claim. For instance, Wilson has alleged that the defendants had an "unwritten rule" that would disqualify him from parole if he refused sex abuse therapy. Under Rule 12(b)(6), that allegation must be accepted as true, but to succeed on the

merits, he must back that up with proof. Similarly, he has alleged that he had to participate in MSAPP treatments in prison and continuing on parole, but he has not offered evidence that those treatments are "highly invasive," in a manner that triggered a liberty interest for other courts. *E.g.*, *Coleman*, 395 F.3d at 223-24 (describing "sex offender therapy[] involving intrusive and behavior-modifying techniques"). There also is a question whether Wilson received the process he was due when the defendants classified him as a sex offender. True, he was not convicted of criminal sexual conduct. But he was given notice of the charge for that offense in state court, and the register of actions in that court indicates that he had the benefit of a preliminary examination and was bound over for trial. *See* ECF 54-3, PageID.703. At a preliminary examination, the criminal defendant is given notice of the charge, the state must produce evidence to establish probable cause that the offense was committed and that the defendant committed it, the defendant is entitled to counsel and to offer evidence in rebuttal, and the probable cause determination is made by a neutral decisionmaker. *See* Mich. Comp. Laws § 766.4; *see also People v. Aiyash*, --- N.W.3d ---, ---, No. 369689, 2024 WL 4293329, at *4 (Mich. Ct. App. Sept. 25, 2024) (citations omitted). It is likely that the robbery victim testified at that proceeding. The features of a preliminary examination are sufficiently similar to the requisites found by other courts for a due process hearing before a prisoner can be classified as a sex offender, *Renchenski*, 622 F.3d at 331-32, such that doubt may be cast on Wilson's claim that he was denied due process. On these points, Wilson will have an opportunity to marshal his evidence, but he has not done so at this stage of the case, and therefore he has not shown a strong likelihood of success on the merits of his procedural due process claim.

Although the preliminary injunction factors must be balanced, when the plaintiff has not made an adequate showing of a strong likelihood of success on the merits, the Court need not consider the remaining factors. *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010).

- 31 -

The defendants' objection to the recommendation to issue a preliminary injunction will be sustained.

III.

The plaintiff has stated a valid claim in his complaint, which is not moot. Fact issues remain that preclude summary judgment in his favor. He also has not made an adequate evidentiary showing to support the issuance of a preliminary injunction at this time.

Nonetheless, the plaintiff has stated a viable claim that his right to procedural due process was abridged when the defendants classified him as a sex offender when he was not convicted of a sex crime, and he was not given a fair opportunity to contest that designation. The consequences that flowed from that classification have evolved since the complaint was filed, and he should have an opportunity to update the pleadings if he desires. Even if he does not amend, the defendants must answer the complaint. Because the defendants apparently continue to require sex therapy as a condition of parole, the duration of which is uncertain, the plaintiff should have an opportunity to present his evidence if he chooses to renew his preliminary injunction motion following pleading amendment.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation (ECF No. 57) is **REJECTED IN PART AND ADOPTED IN PART**, the defendants' objections (ECF No. 62) are **SUSTAINED IN PART AND OVERRULED IN PART**, and the plaintiff's objections (ECF No. 68) are **OVERRULED**.

It is further **ORDERED** that defendants' motion to dismiss the complaint (ECF No. 40) is **DENIED**.

It is further **ORDERED** that plaintiff's motion for summary judgment (ECF No. 46) and motion for a preliminary injunction (ECF No. 29) are **DENIED**.

It is further **ORDERED** that the defendants must answer the complaint **or before October 14, 2024**.

It is further **ORDERED** that the plaintiff may file an amended complaint **or before October 14, 2024**.

It is further **ORDERED** that the order of reference in this case is **WITHDRAWN**, and counsel for the parties shall appear for a status conference on **October 17, 2024 at 4:00 p.m.** to discuss a further case management schedule.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 30, 2024