UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAVAN JERRELLE WILSON, SR.,

    Plaintiff,

v.

NATHANAEL SMITH, BRIAN SHIPMAN, JEROME WARFIELD, SR., CRISSA BLACKENBURG, TIMOTHY FLANAGAN, and JOHN DOE,

    Defendants.
_____/

Case No. 2:23-cv-11666
District Judge David M. Lawson
Magistrate Judge Kimberly G. Altman

## <u>ORDER ON MISCELLANEOUS MOTIONS</u><br><u>(ECF Nos. 89, 90, 94, 97, 105)</u>

    I.    Introduction

This is a prisoner civil rights case. Plaintiff Javan Wilson, Sr. (Wilson)[1] has sued Michigan parole board members Crissa Blankenburg (Blankenburg), Timothy Flanagan (Flanagan), Brian Shipman (Shipman), Jerome Warfield (Warfield), and Nathanael Smith (Smith), alleging that after he began serving a prison sentence for non-sex crimes, he was improperly classified as a sex offender and had his parole

---

[1] Wilson was initially *pro se*, counsel then appeared on his behalf for part of the litigation, and later counsel withdrew, making Wilson again proceeding *pro se*.

1

conditioned upon the completion of sex offender mental health treatment, in violation of his procedural due process rights under the United States Constitution. The case was initially referred to the undersigned for all pretrial matters (ECF No. 13), and referred again following an appeal which was voluntarily dismissed, (ECF No. 85).

Before the Court are the following motions:

- Wilson's Motion to Lift Stay and Renew Supplemental 1983 Complaint for Preliminary Injunction and Summary Judgment (ECF No. 89),

- Wilson's Motion to Supplement Second 1983 Complaint (ECF No. 90),

- Wilson's Motion to Amend and Strike Allegations of Complaint (ECF No. 94), and,

- Wilson's Motion to Expand the Record and Supplement the Summary Judgment (ECF No. 97).

- Defendants' Motion to Strike Wilson's Reply (ECF No. 105).

Additionally, Defendants have filed an answer to the original complaint with affirmative defenses (ECF No. 98), and Wilson has filed a reply to Defendants' answer. (ECF No. 101).[2]

---

[2] Wilson has also filed a motion for a Temporary Restraining Order / Preliminary Injunction, (ECF No. 92), to which Defendants have responded, (ECF No. 100). The Court will consider this motion in due course and issue a report and recommendation to the district judge.

For the reasons below, Wilson's motion to renew his supplemental complaint (ECF No. 89), his motion to supplement the complaint (ECF No. 90), and his motion to amend and strike allegations of the complaint (ECF No. 94) will be GRANTED. Wilson's motion to expand the record and supplement the summary judgment (ECF No. 97) and Defendants' motion to strike Wilson's reply to their answer (ECF No. 105) will be DENIED.

II.    Wilson's Motions Related to the Complaint (ECF Nos. 89, 90, 94, 97)

A.    Background

On September 30, 2024, the district judge denied Defendants' motion to dismiss the complaint, Wilson's motion for summary judgment, and Wilson's motion for a preliminary injunction, and allowed Wilson to renew his motion for a preliminary injunction in the event that Wilson chose to amend his complaint to reflect that he was released on parole subject to allegedly being required to attend sex therapy. Specifically, the district judge found:

> the plaintiff has stated a viable claim that his right to procedural due process was abridged when the Defendants classified him as a sex offender when he was not convicted of a sex crime, and he was not given a fair opportunity to contest that designation. The consequences that flowed from that classification have evolved since the complaint was filed, and he should have an opportunity to update the pleadings if he desires. Even if he does not amend, the Defendants must answer the complaint. Because the Defendants apparently continue to require sex therapy as a condition of parole, the duration of which is uncertain, the plaintiff should have an opportunity to present his evidence if he chooses to renew his preliminary injunction motion following pleading amendment.

3

….

[P]laintiff may file an amended complaint or before October 14, 2024. (ECF No. 72, PageID.880-881).

In accordance with the district judge's order, Wilson has filed several motions seeking to amend and/or supplement the complaint, discussed below.

### B. The First and Second Supplemental Complaint Motions

#### 1. Wilson's First Motion (ECF No. 89)

In the first of these motions, Wilson asks to renew his first supplemental complaint, which was filed on December 17, 2024, and proceed with the case based on that filing. (ECF No. 89, PageID.1004). In the December 17, 2024 supplemental complaint, Wilson explains that he was charged and arrested on allegations of sexual assault but has denied those allegations throughout all proceedings. (ECF No. 79, PageID.942). He says that his presentence investigation report (PSI report) contained false information related to sexual misconduct that he wished to have removed, that he was misclassified as a sex offender in January 2018 at the Jackson prison facility, and that he has worked tirelessly to dispute this classification within and outside of the prison system since. (*Id.*). He requested that his parole not be conditioned on attending Michigan Sexual Abuse Prevention Programming (MSAPP) to no avail. (*Id.*, PageID.943). After years of refusing to attend MSAPP or "admit" to sexual

4

offenses he did not do, and under "extreme fear and duress of being stuck in prison," Wilson began MSAPP as he contends was "mandatory" in order to be released on parole. (*Id.*, PageID.943-947). Wilson also says that he was forced to reside in sex offender units despite never being convicted of a sex-related offense, and that the conditions in those units were unbearable. (*Id.*).

The supplemental complaint goes on to describe the MSAPP therapy that he eventually agreed to attend as a "recommendation" (but really a requirement) for parole. (*Id.*, PageID.947-949). His assigned therapist was Ms. Hansen, and he was required to answer questions and make admissions to sex offenses that he denies. (*Id.*). This made him feel ashamed, embarrassed, humiliated, and broken. (*Id.*). He felt the stigma of sex offender treatment that made him at times suicidal. (*Id.*). Wilson also alleges that despite the program's change in name from the Michigan Sex Offender Program to MSAPP, nothing about the programming has changed, and this was simply done to make lawsuits like Wilson's more difficult to sustain. (*Id.*, PageID.951). Wilson also denies that he voluntarily submitted to the sex offender risk assessment (SORA), which was instead done by psychologist Michael P. Moran on June 23, 2021, using Wilson's PSI and prison files, without a psychological evaluation. (*Id.*, PageID.952). Wilson contends that the SORA process is unconstitutional and in violation of Michigan rules and regulations that only allow this treatment for convicted sex offenders, and that his parole was

wrongfully denied and later approved subject to the condition that Wilson attend further treatment that was unjustified and unnecessary. (*Id.*, PageID.952-954).

After finishing his MSAPP treatment "reluctantly and under extreme coercion," Wilson received a positive parole ruling two months later and was released on parole on April 6, 2023. (*Id.*, PageID.954). This was conditioned on attending further MSAPP treatment while on parole, which was once per week for two hours but in many ways similar to MSAPP treatment within the institution. (*Id.*). He was not allowed to deny the false allegations of sex offenses or else he would be subject to a parole violation. (*Id.*). His employer was informed of his treatment and he was only allowed to continue employment with them after explaining that the sex offense allegations were false. (*Id.*, PageID.957). He was also asked about the treatment by his neighbor, who mistakenly received a piece of mail from the Michigan Department of Corrections (MDOC) regarding tether and parole supervision fees. (*Id.*). Both of these events were highly embarrassing to Wilson. (*Id.*).

Wilson acknowledges that he was sent back to prison on a "minor technical parole violation," the violation being his refusal to provide the password to his phone. (*Id.*). Since returning to prison, he has continued to be misclassified and treated as a sex offender. (*Id.*, PageID.957-958). He was sent back to the Jackson facility for quarantine on September 3, 2024, and was not allowed to work as a

6

porter due to his classification. (*Id.*). His status as a sex offender was announced to him in front of other inmates. (*Id.*). He is also not eligible for a "prisoner gate pass" due to his status. (*Id.*). On October 10, 2024, he was transferred out of quarantine to a sex offender unit despite having completed MSAPP in 2023. (*Id.*, PageID.958). On November 23, 2024, Wilson was assaulted by an inmate due to that inmate's mistaken belief that Wilson was a sex offender because he was housed in the sex offender unit. (*Id.*). After that, Wilson was placed in handcuffs and dragged to a segregation cell, while his assailant was left free to roam the prison yard. (*Id.*, PageID.959). Two days later, Wilson was transferred to the Carson City Correctional Facility (DRF), where he is already known as someone who was housed in a sex offender unit. (*Id.*). He believes these acts were retaliatory in nature and that he has been purposefully placed "in harm's way." (*Id.*).

    2.  Wilson's Second Motion (ECF No. 90)

The same day that Wilson moved to have his December 14, 2024 supplemental complaint reinstated, he also moved to supplement that complaint. (ECF No. 90). In this motion, Wilson states that he was ordered to undergo a psychological evaluation on December 18, 2024. (*Id.*, PageID.1008). This was in order to determine whether the parole board would reinstate or revoke his parole.

(*Id.*). Wilson says that the two measurement tools under SORA, to which he would be subject, are highly flawed and considered to be junk science. (*Id.*).

Wilson explains that he was arrested on two parole violations on August 21, 2024. The first violation was that he was trading sexual favors for marijuana and physically abusing the sixteen-year-old daughter of a woman he had previously dated. (*Id.*). The second was that on May 24, 2024, the daughter set Wilson's apartment on fire, allegedly because he wanted to "keep things going" but she wanted to stop. (*Id.*). Wilson says that the daughter did not do it for that reason, and that she was mentally unstable and had done similar things before with previous men her mother dated. (*Id.*, PageID.1009). He notes that both alleged violations were "dismissed by the state for cause." (*Id.*).

On December 30, 2024, Wilson received a mandatory callout for one of the SORA assessments, the "Static 99R." (*Id.*). Wilson met with Mr. Grierish, a limited license psychologist, who admitted that Wilson did not have any convictions of a sex offense and that the latest allegations against Wilson had been dismissed. (*Id.*). Mr. Grierish said that it did not matter because "a mere allegation of any sexual misbehavior" in Wilson's files sufficed to require him to undergo a psychological evaluation before he is released into the community. (*Id.*).

Wilson requested a formal administrative hearing prior to being assessed, which Mr. Grierish said was a matter to take up with the parole board. (*Id.*,

PageID.1010). Wilson then refused to undergo the assessment without a hearing because he is not a sex offender and is not mentally ill, but said he would do any other assessments related to him. (*Id.*). Mr. Grierish explained that there were no other assessments, and that he would have to do the Static 99R assessment with or without Wilson's involvement. He said if he was Wilson, he would comply with the assessment due to the negative consequences that follow refusal. (*Id.*).

On January 8, 2025, Wilson's parole was revoked. (*Id.*). On the form, the area for reasons in support of the parole board's decision was left blank. (*Id.*, PageID.1011). On January 27, 2025, Wilson kited psychiatrist Mr. Bruner to ask about his SORA assessment results. Mr. Bruner explained that Wilson had been given a score of six on his Static 99R, which was "extremely 'high,'" and that while Wilson scored "the lowest possible" on the Stable 2007 test that was also conducted, Wilson had a combined score of "Level 4a," which was the cutoff for requiring treatment. (*Id.*). Wilson said that he was not going to do MSAPP programming again. (*Id.*). For the rest of their meeting, Mr. Bruner shared some biblical verses with Wilson. (*Id.*, PageID.1012).

Wilson reiterates that the MSAPP programming is a *de facto* requirement for parole. (*Id.*, PageID.1013). He lists the only "voluntary" programs with MDOC as parenting classes, relapse prevention classes, narcotics anonymous, and alcoholics anonymous. (*Id.*). He cites MDOC Policy Directive 05-01-100 paragraph SS as

9

stating that a prisoner's refusal to participate in a "core program" may be taken into consideration by the Michigan parole board. (*Id.*). Wilson says that this violates his due process rights and that requiring him to submit to the flawed, arbitrary SORA assessments has caused him continual irreparable harm. (*Id.*, PageID.1013-1014).

In response, Defendants argue that Wilson has not properly filed a second or an amended complaint because he did not attach a copy of the proposed new complaint to his first motion docketed at ECF No. 89. (ECF No. 96). Further, they say that he failed to attach a copy of the proposed new supplemental complaint to the second motion. (ECF No. 90).

### 3. Discussion

Under Rule 15(d), the court may permit a party to file a supplemental pleading, "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). A motion to supplement, as opposed to a motion to amend, seeks to add allegations pertaining to events arising after the original complaint was filed. *Murphy v. Grenier*, No. 07–15248–DT, 2009 WL 1044832, at *19 (E.D. Mich. Apr. 20, 2009), *aff'd*, 406 F. App'x 972 (6th Cir. 2011). As such, Rule 15(d) contemplates that the supplemental factual allegations may give rise to new legal theories against new

Defendants. *See Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 227 (1964).

Defendant's argument that Wilson has failed to supplement the complaint because he did not attach the proposed complaints to his motions is not well taken. Local Rule 15.1 states that "[a]ny amendment to a pleading . . . must . . . reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference." However, the next and final sentence of the rule is that "[f]ailure to comply with this Rule is not grounds for denial of the motion." E.D. Mich. LR 15.1.

Defendants also cite *Myers v. FCI Ashland* in support, a case that they say came from the Eastern District of Michigan on January 4, 2024. (ECF No. 96, PageID.1051). *Myers*, however, is a Sixth Circuit case which originated from the Eastern District of Kentucky. *See Myers v. FCI Ashland*, No. 22-6111, 2024 WL 3085079 (6th Cir. Jan. 4, 2024). Further, while the district court in *Myers* "denied Myers's motions to supplement and amend his complaint because he did not submit a proposed supplemented or amended complaint," the Sixth Circuit merely found that Myers forfeited any challenge to the district court's ruling by failing to address it in his brief. *Id.* at *3.

*Myers* therefore does not support Defendants' position because it is not a case from this district and does not address Local Rule 15.1, which specifically

11

states that a failure to attach the proposed new complaint or supplement is not grounds for denying a motion to amend or supplement. It is also apparent that the documents at ECF No. 89 and ECF No. 90 themselves are meant to be taken as supplements to the complaint.

Defendants further contend that these motions should be denied because Wilson's supplemental complaints are not "a short and plain statement of the claim showing that the pleader is entitled to relief" under Federal Rule of Civil Procedure 8(a)(2), and that they fail to present his "claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances" under Federal Rule of Civil Procedure 10(b). The argument that Wilson's filings are not sufficiently "short" or "plain" is underdeveloped and thus waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Moreover, in reviewing Wilson's filings and taking into account that he is a *pro se* litigant, the Court finds that he has sufficiently stated his claims in an understandable manner and that Defendants therefore have fair notice of the case against them. Further, while Wilson has undoubtedly failed to number the paragraphs in his supplements, this does not require denial of his motions. *Benschoter v. Hardy*, 202 F.R.D. 216, 219 (E.D. Mich. 2001).

Accordingly, Wilson's motions to supplement the complaint will be granted. The case will be governed by the original complaint (ECF No. 1) and the supplemental filings (ECF Nos. 89, 90).

C. Wilson's Motion to Amend and Strike Allegations of Original Complaint (ECF No. 94)

In Wilson's motion to amend the original complaint and strike part of the allegations in the original complaint, he states that due to his return to the MDOC for purported parole violations, "prior allegations of the requirement to complete sex offender therapy while out on parole [are] now moot." (ECF No. 94, PageID.1044). Wilson's request will be granted. Any allegations regarding Wilson's MSAPP programming while on parole will no longer be a part of this case.

D. Wilson's Motion to Expand the Record and Supplement the Summary Judgment (ECF No. 97)

This motion appears to be an attempt from Wilson to further argue the merits of his case through his motion for summary judgment that has already been ruled on. He says that prisoners are compelled to comply with "recommended" programming because failure to do so results in parole ineligibility, and refusing or declining treatment results in removal from a "year's long" waiting list for such treatment should one wish to later comply. (ECF No. 97, PageID.1055). He explains that MDOC's refusal to hold a hearing before recommending MSAPP

13

treatment to a non-sex offender amounts to a due process violation to which he has been subjected. (*Id.*, PageID.1056).

In response, Defendants correctly point out that there is no pending motion for summary judgment for Wilson to supplement and that Wilson's motion does not appear to be supplemental to the complaint. (ECF No. 106). In this motion, Wilson is clearly attempting to argue the merits of his case rather than state additional facts or claims. This is not proper, nor is there any rule which provides a basis to grant Wilson's motion.

As to the filing of a motion for summary judgment, under the current scheduling order, discovery continues until May 5, 2025, and dispositive motions are due by June 5, 2025. (ECF No. 86). Wilson may therefore file a motion for summary judgment by June 5, 2025. He is advised that a motion for summary judgment filed before the close of discovery will be considered premature.

III. Defendants' Motion to Strike Wilson's Reply to Defendants' Answer (ECF No. 105)

As noted above, Defendants filed an answer to the original complaint on March 13, 2025, as ordered by the Court. (ECF No. 98). Without leave of Court, Wilson filed a reply to the answer, arguing that Defendants' answer was an attempt to "stall" and "avoid answering or responding to [Wilson's] newly found evidence." (ECF No. 101, PageID.1289). Defendants now move to strike this reply. (ECF No. 105).

14

Defendants are correct that under Federal Rule of Civil Procedure 7(a)(7), a reply to an answer is allowed "if the court orders one." However, the Court's authority to strike pleadings is permissive. *See* Fed. R. Civ. P. 12(f) ("The court *may* strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (emphasis added)). Given Wilson's *pro se* status and lack of prejudice to Defendants, the Court declines to strike Wilson's reply.

V. Conclusion

For the reasons stated above, Wilson's motion to renew his supplemental complaint (ECF No. 89), his motion to supplement the complaint (ECF No. 90), and his motion to amend and strike allegations of the complaint (ECF No. 94) are GRANTED. Wilson's motion to expand the record and supplement the summary judgment (ECF No. 97) and Defendants' motion to strike Wilson's reply to their answer (ECF No. 105) are DENIED. As noted above, Wilson's case is governed by the original complaint (ECF No. 1) and the supplemental filings (ECF Nos. 89, 90).

SO ORDERED.

Dated: March 20, 2025  
Detroit, Michigan

s/Kimberly G. Altman  
KIMBERLY G. ALTMAN  
United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 20, 2025.

                                        s/Kristen Castaneda
                                        KRISTEN CASTANEDA, acting in the absence of Dru Jennings
                                        Case Manager