UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAVAN JERRELLE WILSON, SR.,

                        Plaintiff,                      Case Number 23-11666
                                                            Honorable David M. Lawson
v.                                        Magistrate Judge Kimberly G. Altman

NATHANIEL SMITH, BRIAN SHIPMAN,
JEROME WARFIELD, SR., CRISSA
BLANKENBURG, and TIMOTHY FLANAGAN,

                        Defendants.

_____/

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION, DENYING AS MOOT PLAINTIFF'S MOTION FOR AN IMMEDIATE RULING, AND OVERRULING DEFENDANTS' OBJECTIONS TO ORDER ALLOWING SUPPLEMENTAL FILINGS AND CONTINUE REFERENCE TO MAGISTRATE JUDGE**

Michigan prisoner Javan Wilson filed a complaint alleging that defendant prison officials with the Michigan Department of Corrections (MDOC) violated his rights under the Due Process Clause by wrongfully classifying him as a sex offender and imposing institutional requirements upon him consistent with that classification. The Court referred the case to Magistrate Judge Kimberly G. Altman to conduct pretrial proceedings. The litigation generated multiple pretrial motions, including an earlier motion by the plaintiff for a preliminary injunction regarding his parole, which the Court adjudicated after considering the evolving facts relating to the plaintiff's incarceration and eventual release on parole. Since then, the plaintiff has supplemented his pleadings, now alleging that his parole has been revoked and that he likely will not be released again until he participates in sex offender programing. The Court again referred the case to Magistrate Judge Altman. The defendants objected to the magistrate judge's order allowing the supplements. Presently pending is the plaintiff's second motion for a preliminary injunction in

which he asks the Court to prevent MDOC officials from requiring him to participate in sex offender programing and conditioning his re-release on parole on that participation. Judge Altman filed a report recommending that the plaintiff's second motion for a preliminary injunction be denied. Both sides filed objections, and the motion is before the Court for fresh review. Because the relevant factors do not favor injunctive relief, the plaintiff's second motion for a preliminary injunction will be denied.

I.

A.

The facts of the case were discussed at length in an earlier opinion addressing the first round of motions. *See Wilson v. Smith*, No. 23-11666, 2024 WL 4349179, at *1-3 (E.D. Mich. Sept. 30, 2024), *appeal dismissed*, No. 24-1864, 2025 WL 52817 (6th Cir. Jan. 6, 2025). They need not be repeated here. It is sufficient to state that Wilson was charged in the Kalamazoo County, Michigan circuit court with two counts of first-degree criminal sexual conduct (CSC), assault with intent to commit unarmed robbery, assault by strangulation, and being a third habitual offender after he attempted to rob a prostitute. He pleaded guilty to the robbery charge, the other charges were dismissed, and Wilson was sentenced to prison.

Wilson alleges that he was classified by prison authorities as a sex offender despite the absence of any formal conviction of a sex crime. He objected to that classification and its prison programing consequences, but more importantly he alleged that he had to submit to a "Sex Offender Risk Assessment" (SORA) and participate in the Michigan Sexual Assault Prevention Program (MSAPP) before he would be released on parole.

The plaintiff eventually relented and began participating in the program, successfully completing it on May 18, 2023. *See* Treatment Record, ECF No. 31-6, PageID.244. He was

released on parole on September 6, 2023.  *See* Inmate Status Report, ECF No. 31-2, PageID.222. After his release on parole, the plaintiff was required to attend ongoing weekly MSAPP sessions while under supervision, and that condition, which was continued in force throughout the relevant time period, became the focus of the plaintiff's complaint.

B.

After the continuation of the referral for pretrial matters, the plaintiff was permitted to supplement his pleadings to add more recent facts.  In a supplemental filing and supporting affidavit, Wilson stated that on August 21, 2024, he was arrested for violating the conditions of his parole based on a parole violation report that included allegations that he was "trading sexual favors for marijuana" and "physically abusing the 16-year-old daughter of a woman [he] previously dated."  ECF No. 90.  Wilson insists that the allegations of drug-related misconduct and assault are unfounded, and he says that those violations subsequently were "dismissed for cause" by the State.  It is undisputed and confirmed by a current inquiry of public MDOC inmate records that Wilson remains in custody to date, presently housed, once again, at the Carson City Correctional Facility.  In his emergency motion for consideration of injunctive relief, Wilson supplied some additional details, asserting that his parole was revoked based on a "technical violation" of "refusing to provide [a] password to a phone," presumably in response to an inquiry by the assigned parole officer.  *See* ECF No. 110, PageID.1362; Parole Violation Hearing Summ., ECF No. 100-8, PageID.1262-63.

On December 30, 2024, Wilson was directed by the Parole Board to participate via Zoom in a psychological evaluation.  Wilson appeared virtually as directed, but he disputed the new allegations of sexual misconduct, challenged his classification as a "sex offender," and refused to undergo any further "sex offender risk assessment."

On January 8, 2025, the plaintiff received a notice that his parole was revoked by the Parole Board based on his violation of parole conditions, and he was committed to 12 months in custody. Wilson sent a kite to another prison psychological evaluator demanding to know why his parole was revoked and why he was assigned what he says is an excessive recidivism risk score based solely on his refusal to participate in a SORA evaluation. Wilson met with an examiner who responded to his concerns by suggesting a number of "bible verses" that he believed might help Wilson's progress toward rehabilitation.

In his recently filed emergency motion, Wilson further stated that he was informed on March 3, 2025 that he was "removed from the MSAPP waiting list" for a period of 90 days due to his refusal to engage in the SORA process, and that the removal from consideration for that program renders him "ineligible" for parole. ECF No. 110, PageID.1364.

Throughout his recent filings, Wilson insists that he previously engaged with the SORA process only to secure release on parole, and that he did so under duress. In his motion for preliminary injunction, Wilson further asserts that he expects that he will be denied parole for the foreseeable future based solely on his refusal to undergo a second SORA evaluation while in custody, and that since returning to prison he has been housed in a "sex offender housing unit." Wilson prays for an injunction mandating that the Parole Board be required to review his parole eligibility without considering any "dismissed charges" involving alleged sexual misconduct, and that the Board be prohibited from using his refusal to engage in a SORA evaluation as grounds for any prospective denial of parole. *See* ECF No. 92.

The defendants supplemented the record in connection with their opposition to the plaintiff's motion for preliminary injunction by supplying a full transcript of the state court preliminary examination from the underlying criminal proceeding that led to Wilson's robbery

conviction and prison sentence.  Prelim. Exam. Tr., ECF No. 100-3, PageID.1150-1223.  At that

hearing, the complaining witness, Krystal Hunter, testified and was cross-examined by Wilson's

attorney.  A medical professional also testified about injuries to the victim's person that were

observed during a post-assault medical examination.  At the conclusion of the state's proofs,

defense counsel was asked if any other witnesses or evidence would be presented, and the

opportunity to present additional proofs was declined.  *Id.* at PageID.1216.  However, defense

counsel did engage in thorough cross-examinations challenging various aspects of the victim's and

the medical examiner's testimony.  Documentary exhibits were offered and admitted with no

objection from the defense.  *Id.* at 1215-16.  At the conclusion of the hearing, the district judge,

acting as the examining magistrate, summarized the evidence that supported his finding of

probable cause for the bind over:

> On count two, which is the criminal sexual conduct, first-degree, where the
> allegation is that there was sexual penetration, penis to anus, with the victim,
> Krystal Hunter, the prosecutor has established . . . that the defendant was the
> individual identified as the person who perpetrated the crime. The victim in this
> case, Ms. Hunter, testified she did not give permission to be assaulted. She asked
> him to stop and not assault her. She indicated that she was penetrated from behind,
> penis/anus [sic] . . . without permission and that this caused personal injury, as
> testified to by her, indicating that she felt soreness and the nurse indicating that
> there was bruising and what the nurse estimated to be in her report of tears,
> approximately one-eighth to one-quarter inch series of tears was her description, in
> the . . . anal opening area and diffuse swelling around that area as well. This was
> done by force or coercion . . . . [S]he was [under threat] of strangulation if she did
> not comply with what was occurring at the time, the strangulation having preceded
> this.

Prelim. Exam. Tr., ECF No. 100-3, PageID.1220-21.  Notably absent from the entire record of this

case is any hint from Wilson about what contrary evidence he might have presented but was not

allowed to present during the examination of the victim to contradict her narrative of the assault

or to rebut testimony by the medical examiner about the resulting injuries, or to contest evidence

that his fingerprints were found at the scene.  *See id.* at PageID.1215.  It is undisputed that the

- 5 -

subsequent classification decision, and all ensuing consequences, were based on the narrative of the crime that was developed during the prison intake interview and the preliminary examination subsequently incorporated into a presentence investigation report, which was transmitted to prison authorities.  As stated in the Court's prior opinion, the record also contains treatment notes from the plaintiff's prison medical file documenting that the plaintiff admitted to a prison psychological examiner that he sexually assaulted the victim.  That admission is corroborated by testimony and evidence from the preliminary examination, in which the defendant participated with his trial counsel.

C.

The plaintiff initially filed his complaint without the assistance of counsel, but an attorney later appeared on his behalf and participated in prior stages of the litigation.  The plaintiff's counsel was permitted to withdraw while the case was on appeal, and Wilson has continued the suit on his own without a lawyer.  At the outset of the case, the plaintiff filed a motion for preliminary injunction, which the defendants opposed.  The defendants filed a motion to dismiss, and the plaintiff filed a motion for partial summary judgment.  On May 16, 2024, Magistrate Judge Altman filed a report recommending that both of the competing motions for dispositive relief should be denied, but also recommending that the motion for preliminary injunction should be granted and that the Court should order that the "parole condition requiring sexual abuse prevention treatment be discontinued until [the plaintiff] is afforded a hearing that follows the minimum requirements of due process."  Both sides filed objections and responses to the objections, and the plaintiff filed a reply in support of his objections.  On September 30, 2024, the Court issued an opinion in which it found that neither side had established an entitlement to dispositive relief, nor was the plaintiff entitled to a preliminary injunction, but allowed the plaintiff leave to amend his pleadings to plead

additional facts that might have a bearing on the ultimate disposition.  *Wilson v. Smith*, No. 23-11666, 2024 WL 4349179, at *15 (E.D. Mich. Sept. 30, 2024), *appeal dismissed*, No. 24-1864, 2025 WL 52817 (6th Cir. Jan. 6, 2025) ("The plaintiff has stated a valid claim in his complaint, which is not moot. Fact issues remain that preclude summary judgment in his favor. He also has not made an adequate evidentiary showing to support the issuance of a preliminary injunction at this time.").

The plaintiff took an interlocutory appeal, which later was dismissed after his attorney was permitted to withdraw.  After the case returned to this Court, the referral of the matter to the magistrate judge was continued.  The plaintiff was permitted to supplement his pleadings, and on February 21, 2025 he filed a second motion for a preliminary injunction, which presently is pending.  The magistrate judge issued a report on March 26, 2025 recommending that the motion for injunctive relief should be denied, applying the reasoning of the Court's prior ruling and concluding that the plaintiff had failed to set forth sufficient additional facts in any of his supplemental pleadings to convincingly demonstrate a likelihood of success on the merits with his procedural due process claim.  Both sides filed objections to the recommendation, which now is before the Court for a fresh review.  In addition to tendering his objections, the plaintiff also filed an "emergency motion" asking the Court to rule promptly on his injunctive motion.  ECF No. 110.

### D.

The magistrate judge stated in her recommendation that the plaintiff had not put forth any new facts in his supplemental pleadings sufficient to dispel the concerns about lingering fact questions previously identified by the Court, and that he accordingly had not demonstrated a sufficiently compelling likelihood of success on the merits to warrant the extraordinary remedy of early injunctive relief.

The plaintiff objected (1) arguing, without citation of any legal authority, that the mustering of proofs and opportunity to challenge them at a preliminary examination is "not sufficient" to support subsequent classification as a sex offender based on sexual misconduct for which the plaintiff was not convicted, (2) reiterating his prior arguments that *Harper v. Arkesteyn*, No. 19-1928, 2020 WL 4877518 (6th Cir. Apr. 28, 2020) (and the line of cases cited in that opinion where courts recognized that a prison inmate has a liberty interest in not being classified as a sex offender when he has not been convicted of a sex crime) clearly establishes the right not to be "classified" as a sex offender without a formal hearing, as the magistrate judge previously concluded in the plaintiff's favor, (3) asserting that the declaration of the defendants' witness James Kissinger about the basis for the plaintiff's classification should be disregarded because Kissinger has no relevant knowledge or experience to support his attestation, (4) asserting contrary to Kissinger's declaration that participation in MSAPP is not "voluntary," nor is a prisoner allowed to proceed in (or complete) the program without confessing responsibility for a sexual offense, (5) insisting that, absent a "formal hearing," and despite the adjudication of probable cause at a preliminary examination, the plaintiff must be "presumed innocent" of any sex crimes by both the Parole Board and this Court, and (6) arguing that there is now undisputed evidence that Wilson has suffered consequences as a result of the sex offender classification based on the revocation of parole, prison housing assignment in a "sex offender unit," directives to engage in additional SORA evaluations, and exclusion from future parole eligibility based on exclusion from prospective MSAPP programming.

The defendants filed a single objection arguing that the magistrate judge misconstrued the applicable standard for determining the sufficiency of process received at the preliminary

examination, and that all that must be shown to demonstrate the adequacy of process is that the record contained "some evidence" to support the fact-finder's conclusions.

II.

As an initial matter, the defendants object to the magistrate judge's order allowing the plaintiff to file supplemental materials in support of his complaint. ECF No. 109. Under 28 U.S.C. § 636(b)(1), a magistrate judge has the authority "to hear and determine any pretrial matter pending before the court," with the exception of certain dispositive motions. 28 U.S.C. § 636(b)(1)(A). Civil Rule 72 allows parties fourteen days after service of an order entered by a magistrate judge to file their objections to the order. Fed. R. Civ. P. 72(a). The act of filing objections, however, does not stay the force of the magistrate judge's order, which "remains in full force and effect." E.D. Mich. LR 72.2. Upon receiving objections, the Court reviews an order by a magistrate judge on a nondispositive matter to determine whether the decision is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a) (stating that upon receipt of timely objections, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law"); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). "A decision is clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). Where there are two plausible views, a decision cannot be "clearly erroneous." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).

The defendants' objections to the magistrate judge's procedural order are immaterial at this stage of the case, since the defendants merely take issue with the magistrate judge's characterization of certain arguments presented in the defendants' papers, and they did not raise

- 9 -

any substantive challenge to the procedural disposition.  Moreover, the parties subsequently fully engaged the merits of the plaintiff's claims; the plaintiff's motion and the ensuing R&R are fully addressed by briefing, objections, responses, and replies concerning the merits of the claims and the veracity of the alleged facts; and the defendants have not identified any substantive error that was committed by the magistrate judge when she granted the plaintiff's several motions seeking leave to supplement his pleadings.  The defendant's objections to the procedural order (ECF No. 109) will be overruled.

III.

When a party files timely objections to a report and recommendation, on the other hand, the Court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(2), (3) (requiring court review of "any part of the magistrate judge's disposition *that has been properly objected to*") (emphasis added); *United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  This fresh review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part.  28 U.S.C. § 636(b)(1).

But this review is not plenary.  "The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985).  As a result, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others

- 10 -

will not preserve all the objections a party may have." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Tchrs. Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

Objections to a magistrate's report and recommendation must be "specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Parties may not raise new claims or theories not raised previously. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (explaining that the Magistrate Judges Act does not permit "parties to raise at the district court stage new arguments or issues that were not presented to the magistrate").

The parties take no issue with the factors that must be considered before a preliminary injunction is issued under Civil Rule 65. Those factors are: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent [an injunction], (3) whether granting the [injunction] would cause substantial harm to others, and (4) whether the public interest would be served by granting" injunctive relief. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (quotation marks omitted). Although courts describe the inquiry as a balancing test, *see Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007), demonstration of a strong likelihood of success generally is a predominating factor, *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020); *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014) ("the likelihood of success on the merits often will be the determinative factor.").

Wilson alleges that his rights under the Fourteenth Amendment's Due Process Clause have been abridged because he has been classified as a sex offender without having been allowed the procedural protections that would permit him to contest that status. To prevail on a procedural due

process claim, the plaintiff must show "(1) that [he has] been deprived of a cognizable liberty interest, and (2) that such deprivation occurred without adequate procedural protections." *Schulkers v. Kammer*, 955 F.3d 520, 545-46 (6th Cir. 2020) (citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)).

As the Court explained in its earlier opinion, a prisoner may have a protectable liberty interest relating to certain conditions of confinement, which may arise from two sources. It may result from statutes and regulations that regularly bestow benefits to prisoners, the deprivation of which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). A prisoner also has a liberty interest if a change in his custodial conditions situation exceed the sentence imposed by the court, that is, when there are "consequences visited on the prisoner [that] are qualitatively different from the punishment characteristically suffered by a person convicted of crime." *Vitek*, 445 U.S. at 493. Courts refer to the first as a state-created liberty interest, and the second as a free-standing liberty interest. *Renchenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010).

This Court previously held that "Wilson does not have a state-created liberty interest that prevents the state from classifying him as a sex offender and subjecting him to remedial programing based on all available information in the presentence investigation report and intake interviews." *Wilson*, 2024 WL 4349179, at *8 (citing *Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999)). Rather, the Court observed that "state law requires that all information relating to the defendant's background and details of the charges is to be considered when classifying an incoming inmate." *Ibid.* Neither side takes issue with that aspect of the prior ruling, and the plaintiff has not cited any legal authority or factual grounds calling into question the Court's conclusion on this point.

The Court concluded, however, that the plaintiff at least had pleaded a facially viable free-standing due process claim. *Wilson*, 2024 WL 4349179, at *12 ("Wilson has alleged that he suffered the stigma of being classified a sex offender despite not having been convicted of a sex crime, and he has alleged that the classification has caused consequences relating to his release on parole, mandated sex offender programing, and housing placement. These allegations are sufficient to establish a free-standing liberty interest that cannot be abridged without adequate procedural protection.").

Nevertheless, despite finding the pleadings sufficient to state a plausible due process claim, the Court also held that the facts alluded to by the plaintiff in his filings, even if properly pleaded and presumably true, were insufficient to demonstrate by a preponderance of the evidence that the programming to which the plaintiff was subjected was sufficiently intrusive to injure a protected liberty interest. *Wilson*, 2024 WL 4349179, at *14 ("Wilson's motion papers do not establish by a preponderance of evidence that he was coerced into completing MSAPP treatments while in prison.  And he has not described the features of that program in sufficient detail to allow a conclusion as a matter of law that its intrusiveness is on a par with programs described in the other cases finding a free-standing liberty interest.  Wilson responds that the program on which his parole is conditioned requires him to admit to committing a sex crime.  The problem with that contention, however, is that it is not pleaded in his complaint.  That is understandable, since Wilson was released on parole after he filed his lawsuit.  But he has not sought to supplement or amend his complaint to include the fresh allegations, even though he is now represented by counsel."); *id.* at *15 ("Wilson has not described in any level of detail the nature of the sex abuse therapy that he was required to receive in prison or currently is receiving on parole.  Surviving a motion to dismiss the complaint does not necessarily equate to showing a strong likelihood of success on the merits

of a claim.  For instance, Wilson has alleged that the defendants had an 'unwritten rule' that would disqualify him from parole if he refused sex abuse therapy.  Under Rule 12(b)(6), that allegation must be accepted as true, but to succeed on the merits, he must back that up with proof.  Similarly, he has alleged that he had to participate in MSAPP treatments in prison and continuing on parole, but he has not offered evidence that those treatments are 'highly invasive,' in a manner that triggered a liberty interest for other courts.").

Since the Court issued its previous ruling, the facts have shifted once again.  The plaintiff was returned to prison based on what he says was a "technical violation" of his parole conditions (refusing to cooperate with an inquiry by a parole officer demanding access to his cell phone).  However, the plaintiff conspicuously *does not* challenge the grounds for the parole revocation based on the admitted violation of a parole condition; instead, his claim turns solely on fresh allegations that he now is categorically ineligible for re-release on parole based on his refusal to participate in a second SORA evaluation.  The case as now presented varies from that framed by the original complaint, where the plaintiff initially sought injunctive relief barring the defendants from requiring prospectively that he continue to participate in MSAPP programming as a condition of release and continuation on parole.

Notably absent from the plaintiff's entire presentation subsequent to the Court's prior ruling are (1) any further details about the level of intrusiveness of the SORA evaluation process and MSAPP programming, or (2) any rebuttal of the Court's observations about the preliminary examination proceeding in the state trial court, which the Court relied upon in concluding that significant questions of fact exist about the adequacy of the process received.  The plaintiff's supplemental allegations amount to little more than what he previously alleged, but for the fact that he now insists that, as a consequence of his complete refusal to engage with a second risk

- 14 -

assessment evaluation, he has been excluded from participation in the MSAPP program, resulting in a categorical ineligibility for parole.  True, the Court already previously found that the plaintiff had made out a minimally sufficient pleading of a cognizable due process liberty interest based on allegations that he was required to participate in the MSAPP in order to secure access to parole and to continue in parole status after release.  The amended and supplemental pleadings, however, offer no additional facts addressing the doubts previously identified by the Court about whether the MSAPP programming is sufficiently "invasive" to implicate a protected liberty interest, or whether the plaintiff had an adequate procedural avenue to challenge the factual narrative of the dismissed sexual assault charges that subsequently precipitated his classification as an inmate in need of rehabilitative programming to address a history of sexual misconduct.

The magistrate judge aptly concluded that nothing in the supplemental pleadings addressed the deficiencies in the record previously identified by the Court, and in the absence of additional dispositive facts, the case is left in the same spot it previously sat, with a nominally adequately pleaded claim, but without a record convincingly establishing a likelihood of success compelling enough to justify immediate injunctive relief.

As to the second element (adequate procedural protections), there still are lingering fact questions about whether the plaintiff received adequate process, since the record (which now includes a full record of the preliminary examination proceeding), strongly suggests that the plaintiff was afforded ample opportunity at his preliminary examination in the state trial court to challenge the factual narrative of the crimes that later precipitated the sex offender classification. *Wilson*, 2024 WL 4349179, at *15 ("There also is a question whether Wilson received the process he was due when the defendants classified him as a sex offender.  True, he was not convicted of criminal sexual conduct.  But he was given notice of the charge for that offense in state court, and

the register of actions in that court indicates that he had the benefit of a preliminary examination and was bound over for trial.  *See* ECF 54-3, PageID.703.  At a preliminary examination, the criminal defendant is given notice of the charge, the state must produce evidence to establish probable cause that the offense was committed and that the defendant committed it, the defendant is entitled to counsel and to offer evidence in rebuttal, and the probable cause determination is made by a neutral decisionmaker.  It is likely that the robbery victim testified at that proceeding. The features of a preliminary examination are sufficiently similar to the requisites found by other courts for a due process hearing before a prisoner can be classified as a sex offender, *Renchenski*, 622 F.3d at 331-32, such that doubt may be cast on Wilson's claim that he was denied due process. On these points, Wilson will have an opportunity to marshal his evidence, but he has not done so at this stage of the case, and therefore he has not shown a strong likelihood of success on the merits of his procedural due process claim.") (citing Mich. Comp. Laws § 766.4; *People v. Aiyash*, --- N.W.3d ---, No. 369689, 2024 WL 4293329, at *4 (Mich. Ct. App. Sept. 25, 2024)).  The record now shows that the Court's assumptions about the preliminary examination proceeding were well founded, and that there was abundant evidence developed in the record to support a conclusion by any reasoned decider that the plaintiff's crime in fact involved a component of sexual assault, regardless of the ultimate disposition of the various charges.

Moreover, Wilson's presentation since the case has returned to this Court has fixated entirely on procedures followed (or, he says, that he expects will be followed) by the Parole Board in rendering any *prospective* adjudication of his parole status.  However, any claim based on procedural defects in any parole proceeding or the consideration by the Parole Board of "unreliable" or "inaccurate" information when deciding to deny or defer parole and determining what parole conditions should be imposed is foreclosed by the controlling cases holding that no

viable procedural due process claim may be brought to challenge the outcome of a purely discretionary parole review as provided for by Michigan law. *Kikuchi v. Bauman*, No. 20-1593, 2020 WL 7587156, at *2 (6th Cir. Oct. 22, 2020) ("As a convicted prisoner . . . Kikuchi has no inherent constitutional right to parole. Further, the laws of Michigan do not create a liberty interest in parole. . . . Without any right to parole, Kikuchi cannot state a claim that the procedures used by the Michigan Parole Board to evaluate him for parole, or the substantive reasons for the denial of parole itself, violated his right to due process.") (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987); *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979)); *see also Toney v. Owens*, 779 F.3d 330, 341-42 (5th Cir. 2015) ("The other consequences Toney faced due to his sex offender classification also fail to give rise to a liberty interest. First, Toney contends that his sex offender status resulted in the repeated denials of his parole. However, even assuming the parole board relied on this factor in deciding to deny his parole, we have consistently held that Texas prisoners cannot mount a challenge against any state parole review procedure on procedural Due Process grounds. . . . Accordingly, even if the parole board considered unreliable or even false information regarding Toney's sex offender status in making its parole determinations, this simply does not assert a federal constitutional violation.") (cleaned up). Furthermore, to the extent that the plaintiff contends that the Parole Board has misapplied state statutes and regulations, it is well settled that "[p]rocess is not an end in itself," since "[i]ts constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). Mere violations of procedural guidelines promulgated by state authorities do not establish a due process violation. *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 592 (7th Cir. 2021); *Lavite v. Dunstan*, 932 F.3d 1020, 1033 (7th Cir. 2019).

Finally, the cases on point pose a further obstacle to success on the wrongful classification claim since the plaintiff has not presented any evidence to rebut the factual narrative of the crime which involved a violent sexual assault of the complaining witness. As previously highlighted, the Fifth Circuit declined to recognize a liberty interest where a prisoner admitted to facts establishing that the offense of conviction did include a component of sexual assault. *See Jennings v. Owens*, 602 F.3d 652, 659 (5th Cir. 2010). The record here discloses evidence — unrebutted by any contrary testimony from the plaintiff — that Wilson admitted to a prison evaluator that he committed rape during the course of the robbery for which he was convicted, Sexual Offense Risk Assessment (SORA) Form dated Dec. 14, 2022, ECF No. 31-6, PageID.238., and *Jennings* holds that no liberty interest is invaded where the offense of conviction admittedly included admission to a component of sexual assault. *See also Vega v. Lantz*, 596 F.3d 77, 83-84 (2d Cir. 2010) ("Vega has contradicted neither the conduct supporting this conviction, nor the Department's sworn averment that this convicted conduct sustains Vega's SOTN score 'standing alone.' . . . . If Vega had not been convicted of amputating a part of a sixteen-year-old girl's body that is classified as a sexual organ under Connecticut law, this may well have presented a different case. Vega, however, does have such a conviction. And prison officials are under no constitutional obligation to blind themselves to reality in assessing Vega's needs while he is in their care.") (finding no due process violation where plaintiff was classified as a sex offender after being convicted only for assault in the first degree but acquitted on charge of first-degree sexual assault).

For these reasons, Wilson has not established a likelihood of success on the merits of his claim. Although the preliminary injunction factors must be balanced, when the plaintiff has not made an adequate showing of a strong likelihood of success on the merits, the Court need not consider the remaining factors. *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010).

The plaintiff's objections to the recommendation to deny his second motion for a preliminary injunction will be overruled.

### IV.

The defendants' objections to the report and recommendation taking issue with the magistrate judge's characterization of the presumed burden of proof at a preliminary examination do not address a material point, since the defendants do not challenge the recommended disposition, and the magistrate judge did not recommend any dispositive relief concerning any prospective proceedings that might implicate any particular burden of proof. The defendants' objections (ECF No. 111) also will be overruled.

### V.

The Court agrees with the magistrate judge's conclusion that the plaintiff has not made an adequate evidentiary showing to support the issuance of a preliminary injunction. The parties' objections to the report and recommendation lack merit. The defendants' objection to the magistrate judge's order allowing the plaintiff to supplement his pleadings also lacks merit. The plaintiff's emergency motion for an expedited ruling is now moot.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation (ECF No. 108) is **ADOPTED**, and the parties' objections (ECF Nos. 111, 113, 115) are **OVERRULED**.

It is further **ORDERED** that plaintiff's second motion for a preliminary injunction (ECF No. 92) is **DENIED**.

It is further **ORDERED** that the defendants' objection to the magistrate judge's procedural order (ECF No. 109) are **OVERRULED**.

It is further **ORDERED** that the plaintiff's emergency motion for an immediate ruling (ECF No. 110) is **DENIED as moot**.

It is further **ORDERED** that the second order of reference (ECF No. 85) is **CONTINUED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  May 5, 2025